380 A.2d 1217

COMMONWEALTH of Pennsylvania

v.

Russell FLEWELLEN, Appellant.

Supreme Court of Pennsylvania.

Submitted March 7, 1977.

Decided Dec. 23, 1977.

Lester G. Nauhaus, John H. Corbett, Jr., Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant, tried for murder, voluntary manslaughter and robbery, was convicted by a jury of voluntary manslaughter. After post-verdict motions were denied, the court sentenced him to imprisonment of five to ten years. The issue on this appeal [1] is whether the court erred in refusing to suppress evidence as the fruit of an illegal arrest.[2] We affirm.

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977).

2. Appellant also contends that: (1) his inculpatory statement was not voluntary; (2) the trial court's refusal to accept certain points for charge to the jury constituted prejudicial error; (3) the evidence was insufficient to support the conviction; and (4) he was denied the

I

Sometime between 11:30 p. m., June 13, 1975, and 1:00 a. m., June 14, 1975, Thomas Kennedy was killed by a crushing blow to the skull apparently inflicted with a large piece of concrete found lying bloodstained beside the body. The victim's pockets had been turned out. A witness interviewed between 2:00 a. m. and 3:00 a. m. told police that she had observed two men scuffling in the place where the body was discovered. According to the witness, one of the men, wearing a tan suit, crossed the street after the disturbance and entered the building in which appellant lived.

Around 3:00 a. m., the officer in charge of the investigation dispatched several officers to question the residents of appellant's building. The officers went to the building, knocked, and were admitted by one of the residents, Mr. Everett. They asked Everett if he knew anything about the killing and if anyone else was in the building. Everett professed ignorance of the killing, but said that three others, including appellant, lived on the premises. The police then inquired at each door on the first and second floors, after which they knocked at appellant's apartment on the third floor. Appellant, dressed for bed, allowed the officers to enter.

Appellant stated that he knew nothing of the killing, claiming that he had been out jogging. He also mentioned that while running he had lost his watch and, discovering the loss when he returned, had gone out again in the vicinity in which the body was found to search for the timepiece. He did not find the watch and went to bed about 12:30 a. m. During this conversation, the police noticed a tan suit draped over a chair.

After the investigating officers returned to the police station around 4:35 a. m., they began discussing the facts of

opportunity to testify because the court refused to hold a hearing outside the presence of the jury to determine if the Commonwealth could attack his credibility by referring to prior convictions. The last issue has not been preserved for appellate review. We find the other contentions without merit.

the case. One of the officers who had not interviewed appellant remarked that a watch had been found near the body. This fact, coupled with appellant's statement that he lost a watch in the area, the witness's report that one of the men fighting had been wearing a tan suit and had entered appellant's building, and observation of a tan suit in appellant's room prompted them to return to appellant's apartment about 6:00 a. m. The police took appellant into custody, informing him of his *Miranda* rights. Appellant put on the tan suit and was taken to the Public Safety Building, where he was again informed of his rights about 6:30 a. m.

The police began questioning appellant, who maintained his innocence. The officers then noticed certain spots resembling dried blood on appellant's suit. The police confiscated the suit.

While the police examined the suit around 7:00 a. m., they placed appellant in confinement, where he remained alone until about 9:20 a. m. The police at that time learned the results of the laboratory examination of the suit, revealing that the bloodstains on it were of the victim's type and differed from appellant's own blood type. The watch discovered near the body was shown to appellant, who identified it as his. The police then had appellant arraigned for murder. About 9:45 a. m., the police resumed interrogating appellant, who then gave a statement. Appellant claimed that while walking down the street the previous night, he had been accosted by Kennedy, who was intoxicated.[3] According to appellant, when Kennedy grabbed him and threatened to pull out a gun, appellant struck him repeatedly about the face until Kennedy fell unconscious. Appellant insisted that he did not rob Kennedy and that Kennedy was still breathing when appellant left and when he returned to search for the missing watch. Once more advising appellant of his rights, the police had him repeat this statement so that it could be tape recorded and then had him arraigned for robbery shortly after completing the recording at 10:30 a. m. The recording was played at appellant's trial.

3. Expert testimony at trial established that Kennedy was intoxicated when killed.

446

## II

Appellant contends that the trial court erred in failing to suppress the tan suit because it was the product of an arrest made without probable cause. We do not agree.

The Fourth Amendment to the Constitution of the United States "protects people from unreasonable government intrusions into their legitimate expectations of privacy." *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977); accord, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Commonwealth v. Strickland,* 457 Pa. 631, 326 A.2d 379 (1974), cert. denied, *Pa. v. Platou,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society. See *United States v. Chadwick,* supra; *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Terry v. Ohio,* supra; *Katz v. United States,* supra; *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Appellant legitimately held such an expectation of privacy in his apartment on the third floor of his building.

When the police entered the building in which appellant lived, they began a search for the killer of Thomas Kennedy. The police had probable cause to intrude upon whatever expectation of privacy appellant legitimately may have had in the hallway. See *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Dorman v. United States,* 140 U.S.App.D.C. 313, 435 F.2d 385 (1970); *Morrison v. United States,* 104 U.S.App.D.C. 352, 262 F.2d 449 (1958); *Commonwealth v. Forde,* 367 Mass. 798, 329 N.E.2d 717 (1975); *People v. Eddington,* 387 Mich. 551, 198 N.W.2d 297 (1972). See also *United States v. Santana,* 427 U.S. 38, 96

S.Ct. 2406, 49 L.Ed.2d 300 (1976); *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The investigating officers could reasonably believe that the perpetrator was in appellant's building, for they had an eyewitness account that one of the participants in the fight had soon after entered the building. They had also discovered the body near appellant's building where the witness reported the fight had taken place. With these facts, the officers had probable cause to enter appellant's building to search for the killer a few hours after commission of the crime.

 Once inside the building, the police then began knocking on doors to question the residents. This investigation also was proper, for the police were properly in the hallway of the building.[4] When the officers presented themselves at appellant's door, he could have refused to allow them to enter, for at that point they lacked probable cause to believe that appellant had committed the crime; his mere presence in the building into which the assailant had fled could not have implicated him. Appellant, however, permitted the officers to enter his room. Thus, the police were properly in appellant's room when they observed the tan suit in plain view and spoke with appellant.

The discovery of the suit, coupled with the other information the officers had gleaned during the evening's investigation, provided probable cause to arrest appellant. The information available to the police at that time indicated that the assailant had not only entered appellant's building soon after the killing, but that he had been wearing a tan suit. The police had observed a tan suit in appellant's room and

---

4. Appellant does not contend that the police should have obtained a judicial warrant authorizing entrance of the building. To support the failure to procure a warrant, the Commonwealth would have to establish a factual basis for the warrantless search. See e. g., *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Because appellant has not raised this issue at any time, it has not been preserved for appellate review. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). Consequently, we cannot consider the propriety of the warrantless intrusion.

had been told by appellant that he had been near the scene of the killing at about the time the killing occurred. Moreover, a watch discovered near the body fit the description of the one appellant said he had lost that night. The police could reasonably believe appellant had committed the crime and was still in his apartment. Accordingly, the intrusion upon appellant's expectation of privacy was proper, and the arrest of appellant was therefore lawful.[5] It follows that the suit was not the fruit of an illegal arrest and was properly admitted into evidence.

Judgment of sentence affirmed.

EAGEN, C. J., concurred in the result.

---

5. Appellant at no time has contended that the police should have obtained a warrant authorizing his arrest. See note 4, infra.