391 A.2d 1005

COMMONWEALTH of Pennsylvania

v.

Michael D. KAMPO, Appellant.

Supreme Court of Pennsylvania.

Argued March 10, 1978.

Decided Oct. 5, 1978.

518

Sanford S. Finder, Washington, for appellant.

Jess D. Costa, Dist. Atty., Samuel L. Rodgers, Washington, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Michael D. Kampo, was convicted of murder of the first degree in the Court of Common Pleas of Washington County and sentenced to life in prison. He now appeals the judgment of sentence.

■ Appellant does not challenge the sufficiency of the evidence. However, we are required to review this question by the Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187. In doing so, we will follow the standard of review set forth in *Commonwealth v. Rose,* 463 Pa. 264, 267–68, 344 A.2d 824, 825 (1975):

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reason-

ably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The fact-finder is free to believe all, part, or none of the evidence. . . . " (Citations omitted.)

The Commonwealth's evidence establishes that on July 25, 1975, the decedent, Sherman Edward Armstrong, II, age 15, and his family stopped at a Dari-Delite on Main Street in the Borough of Bentleyville, Washington County. Appellant's home was approximately one hundred yards to the west of the Dari-Delite. The decedent was standing at the Dari-Delite, purchasing an ice cream cone, when a shot was fired from the direction of appellant's house. The decedent was mortally wounded by a bullet that passed through the base of his neck and struck an artery. The time was approximately 4:15 p. m. Two bystanders, Mark Segedi and John McKenna, confirmed that the shot was fired from the direction of appellant's home. The two witnesses also testified that no persons or vehicles were passing the store at the time of the shot. Prior to the shooting, appellant was at Brown's Tavern, where he was served by Mary Jean Kennedy, a barmaid. He was then driven to his home by Franklin Blackburn, appellant's drinking companion.

Kennedy and Blackburn testified that appellant had told them that someone was going to die that day. Blackburn drove appellant to his home at approximately 4:00 p. m. and then went to the Dari-Delite. Shortly after the shooting, appellant appeared at the Dari-Delite, when Blackburn noticed a fresh cut on his forehead near the eye. Appellant asked what had happened. When told of the shooting, he did not react. He then returned to his home. Subsequently, Chief William Stankovich of the Bentleyville Police arrived at the Dari-Delite. Stankovich retrieved a fragment of the jacket of the bullet used in the shooting and was told that the shot came from the direction of appellant's house. Stankovich went to appellant's home, where he arrested appel-

lant at approximately 4:45 p. m. In appellant's home Stankovich found other bullets and spent shells of the same type as used in the shooting. Subsequently, a search warrant was executed and the rifle used in the shooting was found. Appellant admitted that he used the rifle to fire the shot. He claimed, however, that he was aiming at a garbage can at the Dari-Delite and not at the decedent. He attributed his lack of accuracy to a defective scope. However, Commonwealth witness Barry Trew contradicted appellant's story. Trew operates two hunting and fishing supply stores with merchandise which includes firearms and ammunition. He was called as an expert witness on firearms. At the request of police, he had conducted tests with the rifle used by appellant. The results of the tests indicated that the scope was in fact defective. However, he concluded that the decedent would not have been shot if the rifle had been aimed at the garbage can, as appellant had claimed. He determined that the rifle would have had to have been aimed at the small of decedent's back for him to have been shot in the neck.

Appellant next claims that at the time of the shooting, he was too intoxicated to form an intent to kill and that he was insane. Several witnesses who saw appellant near the time of the shooting testified that in their judgment, he was not intoxicated. Herbert Thomas, a psychiatrist called by the defense, testified that he had examined appellant and found him to have been insane at the time of the shooting. The Commonwealth had appellant examined by another psychiatrist, Owen Benton, who testified in rebuttal that appellant was sane at the time of the homicide. On the basis of the evidence, we find that it was permissible to believe that appellant aimed his rifle at the decedent, shot with the intent to kill, and was neither intoxicated nor insane. The evidence will sustain the verdict.

Appellant argues that a tape recorded statement and written confession by him were the result of an unnecessary delay between arrest and arraignment and, therefore, were inadmissible. We do not agree. See Pa.R.Crim.P. 130 and *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972).

■ Appellant's motion to suppress the evidence was denied. In reviewing such denial, we are to consider only the evidence of the Commonwealth and the uncontradicted evidence of appellant. *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). The evidence shows that Chief Stankovich arrested appellant at his home at 4:45 p. m. on the day of the shooting, after having retrieved a bullet fragment from the scene of the homicide. Stankovich noticed other bullets while in appellant's home at that time. Appellant arrived at the Bentleyville police station at 5:00 p. m. and was given his *Miranda* warnings, which he waived. Appellant was questioned until 5:20 p. m. He said that he had a gun that the bullets would fit but had lost it in a poker game and that it was not then in his home. Stankovich was joined by State Trooper Edward Pauley at 5:20 p. m. The officers obtained a warrant to search the house, executed it, and found the rifle that was connected to the shooting. They returned to the station at 8:00 p. m., repeated the *Miranda* warnings and questioned appellant after he again waived his rights. At 8:35 p. m., appellant admitted shooting the rifle. The questioning lasted until 8:50, when appellant gave a written statement, which took approximately twenty minutes. The interrogation from 8:00 p. m. until 8:50 was taped and recorded. He was then immediately taken for arraignment. Appellant claims that the delay involved in procuring and executing the search warrant was unjustified and renders appellant's statement inadmissible. We do not agree.

■ A delay is permissible if it is accounted for by necessary steps in the police process, which may involve checking the suspect's story. *Commonwealth v. Whitson,* 461 Pa. 101, 334 A.2d 653 (1975). The search was conducted for the purpose of checking appellant's contention that he did not have a gun that could have fired the shot. Moreover, the interrogation, search, and arraignment were conducted with such dispatch as to withstand any objection on the basis of unnecessary delay.

■ Appellant next argues that the statement should be suppressed because it was obtained by inducements that render it involuntary. He accuses the officers of making statements to the effect that if he admitted what he had done, he might be able to excuse his conduct to such a degree that he could be convicted of a lesser offense or even given probation. We said in *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974), that a subterfuge likely to induce a confession could invalidate any confession obtained. In the instant case, we find no such subterfuge. Appellant was given all required warnings and told he was charged with murder of the first degree. The officers told him that they were making no promises. They did not make any promises or threats. They confronted him with evidence that they had obtained against him. They were truthful in telling him what they had. While they did not make any promises of leniency, they told him they would tell the court if he cooperated. They also told him that it would work in his favor if he was intoxicated or aiming at the garbage can. It was true that if the trier of fact believed his story that he was intoxicated and shot at the garbage can, he could have been convicted of a lesser charge because of a lack of intent to kill. We find no subterfuge. We said in *Jones* that the totality of circumstances must be considered in determining the voluntariness of a confession. Appellant not having been subjected to any threat, promise, or subterfuge, we find that the confession was voluntary under the totality of the circumstances of this case.

■ Appellant argues that the testimony of Dr. Herbert Thomas, a defense psychiatrist, was unduly restricted in that he was not permitted to testify that at the time of shooting, appellant was intoxicated and acting under a paranoid delusional rage that prevented him from forming a specific intent to kill. Such questioning was not allowed on direct examination, but it was allowed on re-direct. If there was any error, appellant was not prejudiced.

■ Appellant next argues that although a voluntary manslaughter charge was given to the jury, the court erred

in not charging that appellant's paranoid delusions could reduce the degree of his guilt to voluntary manslaughter. Appellant did not request such a charge until the jury had retired to deliberate and then had come back for further instructions. He did not object to its omission before the start of jury deliberations. Therefore, the issue is not preserved for review. *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975).

■ Appellant next argues that the testimony of Barry Trew, a firearms expert, was irrelevant. Appellant's objection centered around Trew's testimony about the defective scope on appellant's rifle and the degree and nature of the distortion of that scope. We do not agree. The question as to where the gun was aimed was material. Trew's testimony increased the probability that appellant aimed at the decedent and decreased the probability that he aimed at the garbage can as he contended. Evidence that tends to increase or decrease the probability of a material fact is relevant. *Commonwealth v. Myers,* 439 Pa. 381, 266 A.2d 756 (1970).

■ Appellant's interrogation by the police at 8:00 p. m. on the day of the arrest was taped. Appellant alleges that the recording and a transcript thereof were not given to him in a timely fashion. We do not agree. The court below ordered that appellant be furnished with a copy of his inculpatory statement, which was proper under Pa.R.Crim.P. 310, adopted June 30, 1964, effective January 1, 1965, renumbered to 305, June 29, 1977. Appellant received a copy of his written statement in September, 1975, six months before trial. He received a copy of the tape on January 8, 1976, and the trial was postponed so that he could make use of the recording. On March 5, counsel claimed that one side of the tape was unsatisfactory and asked for permission to make his own copy. He copied the tape on March 11. Trial commenced on March 15. At that time, appellant had had the statement for six months and the tape of the statements for two months. We find that this was ample time to make use of them and correct any defects. There was no error.

Appellant alleges that his right against self-incrimination was violated by the court's granting of the Commonwealth's petition for psychiatric examination conducted by a Commonwealth psychiatrist. Such an examination does not violate the right if the defendant is not compelled to answer questions. *Commonwealth v. Glenn,* 459 Pa. 545, 330 A.2d 535 (1974). The court's order stated that the Commonwealth's petition was granted "subject to the right of the defendant to answer or not answer any questions put to him during the examination so as to preserve his right against self-incrimination." Appellant's rights were adequately protected by the imposition of that condition.

Having considered all of the allegations of error, we find no merit to this appeal.

The judgment of sentence is affirmed.

ROBERTS, J., concurs in the result.

MANDERINO, J., did not participate in the consideration or decision of this case.