396 A.2d 1177

**COMMONWEALTH of Pennsylvania**

v.

**Kevin WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Argued April 20, 1978.

Decided Nov. 18, 1978.

Reargument Denied Feb. 12, 1979.

294

Frank J. Eustace, Jr., Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Glenn S. Gitomer, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Kevin Williams, was convicted of murder of the first degree in the Court of Common Pleas of Philadelphia, and sentenced to life imprisonment. He appeals the judgment of sentence.

Appellant was charged in connection with the death of James Spinks. The victim, accompanied by a friend, James Norwood, was walking southward on the east side of 32nd Street in Philadelphia between 9:00 and 10:00 p. m. on September 30, 1972. Just after they crossed Berks Street, Spinks was fatally shot from the rear. A .22 caliber bullet entered the right back, passed through the liver, traveled at an angle through the middle of the body, and lodged in the left chest.

On October 14, 1973, a rifle was thrown from a car being chased by Philadelphia police. The car was occupied by four individuals, including one James Davis, all of whom were arrested. Ballistics experts determined that the rifle was

the one used to shoot Spinks. Appellant did not became a suspect in the shooting until September 5, 1975, when Shelly Knox, who was being questioned about the unrelated killing of a storekeeper, said that appellant told him on October 1, 1972, that he had shot Spinks. Knox said that James Davis was later arrested with the weapon used to murder Spinks. Appellant was arrested at his home without a warrant at 6:35 a. m. on September 6, 1975. He gave a statement to the police in which he said that he broke into a car on the night of the shooting and took a .22 caliber rifle from which he fired a shot toward Spinks and Norwood. He gave the rifle away the next day. He said that he did not know who Spinks and Norwood were at the time of the shooting, but learned the next day that the decedent was someone known to him as "Chuckie," and that he had known the decedent for approximately two years. Appellant later repudiated the statement and attempted to have it suppressed. He testified at trial and denied involvement in the shooting. Appellant was eighteen at the time of the arrest and fifteen at the time of the shooting.

■ Appellant argues that the evidence does not support the verdict. He claims that neither intent to kill nor malice can properly be inferred from the firing of a shot from a distance toward people appellant did not know. Therefore, in appellant's view, the degree of guilt could not rise higher than voluntary or involuntary manslaughter. He claims to be entitled to a discharge on the basis that the Statute of Limitations barred a manslaughter prosecution. We do not accept appellant's claim. We review the evidence in light of the standard set forth in *Commonwealth v. Rose,* 463 Pa. 264, 344 A.2d 824 (1975), where we stated that:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . .

Moreover, it is the province of the trier of fact to pass

upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The fact-finder is free to believe all, part, or none of the evidence. . . ." (Citations omitted.)

It may be inferred from the evidence that appellant shot the decedent in a vital part of the body, allowing an inference of malice and premeditation. *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976). The inference may be drawn even if appellant shot the decedent from a distance and did not know him. See *Commonwealth v. Kampo,* 480 Pa. 516, 391 A.2d 1005 (1978). Appellant's argument that he should be discharged on the basis of the Statute of Limitations for voluntary manslaughter is meritless.

■ Appellant next argues that the court erred in refusing to suppress his confession. He claims that since he was arrested in his house without a warrant in the absence of exigent circumstances, the arrest was, therefore, violative of the Fourth Amendment protections against unreasonable search and seizure. He further argues that the confession was a product of the illegal arrest, thereby rendering it inadmissible.

While we have never been confronted with the issue of whether an arrest warrant is required to effectuate a valid arrest inside the arrestee's home,[1] said issue has been carefully considered in the various circuit courts. There, various cases have held that because of the Fourth Amendment and the substantial expectation of privacy in one's home, an arrest warrant is required to validly arrest someone in his home unless exigent circumstances exist to justify the warrantless intrusion. *United States v. Reed,* 572 F.2d 412 (2d Cir. 1978); *United States v. Shye,* 492 F.2d 886 (6th Cir. 1974); *Dorman v. United States,* 140 U.S.App.D.C. 313, 435 F.2d 385 (1970); and *Vance v. North Carolina,* 432 F.2d 984 (4th Cir. 1970).

1. In *Commonwealth v. Flewellen,* 475 Pa. 442, 380 A.2d 1217 (1977), we upheld the validity of a warrantless arrest in defendant's house. There, however, the defendant alleged only that the arrest was made without probable cause. We were not called upon to answer the question posed in the instant case.

As the United States Supreme Court stated in *United States v. Martinez-Fuerte,* 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976), when discussing border-check-point stops:

"We think the same conclusion is appropriate here (that in certain instances, a governmental interest in allowing a minimal intrusion outweighs a private citizen's expectation of privacy), where we deal neither with searches nor with the *sanctity of private dwellings, ordinarily afforded the most stringent Fourth Amendment protection.*" (Emphasis added.)

As the court stated in *Dorman v. United States, supra,* 140 U.S.App.D.C. at 320, 435 F.2d at 392–93:

"Terms like 'exigent circumstances' or 'urgent need' are useful in underscoring the heavy burden on the police to show that there was a need that could not brook the delay incident to obtaining a warrant, and that it is only in the light of those circumstances and that need that the warrantless search meets the ultimate test of avoiding condemnation under the Fourth Amendment as 'unreasonable.' While the numerous and varied street fact situations do not permit a comprehensive catalog of the cases covered by these terms, it may be useful to refer to a number of considerations that are material, and have particular pertinence in the case at bar.

"First, that a grave offense is involved, particularly one that is a crime of violence. See, e. g., *Warden v. Hayden* [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)]; *McDonald v. United States,* 335 U.S. 451, 459, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (concurring opinion of Justice Jackson). Contrariwise the restrictive requirement for a warrant is more likely to be retained, and the need for proceeding without a warrant found lacking, when the offense is what has been sometimes referred to as one of the 'complacent' crimes, like gambling.

"Second, and obviously inter-related, that the suspect is reasonably believed to be armed. Delay in arrest of an armed felon may well increase danger to the community

meanwhile, or to the officers at time of arrest. This consideration bears materially on the justification for a warrantless entry.

"Third, that there exists not merely the minimum of probable cause, that is requisite even when a warrant has been issued, but beyond that a clear showing of probable cause, including 'reasonably trustworthy information,' to believe that the suspect committed the crime involved.

"Fourth, strong reason to believe that the suspect is in the premises being entered.

"Fifth, a likelihood that the suspect will escape if not swiftly apprehended.

"Sixth, the circumstances that the entry, though not consented, is made peaceably. Forcible entry may in some instances be justified. But the fact that entry was not forcible aids in showing reasonableness of police attitude and conduct. The police, by identifying their mission, give the person an opportunity to surrender himself without a struggle and thus to avoid the invasion of privacy involved in entry into the home.

"Another factor to be taken into account, though it works in more than one direction, relates to time of entry—whether it is made at night. On the one hand, as we shall later develop, the late hour may underscore the delay (and perhaps impracticability of) obtaining a warrant, and hence serve to justify proceeding without one. On the other hand, the fact that an entry is made at night raises particular concern over its reasonableness, as indicated in Justice Harlan's opinion in *Jones v. United States* [357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)], and may elevate the degree of probable cause required, both as implicating the suspect, and as showing that he is in the place entered." (Footnotes omitted.)

In the instant case, the following factors would weigh in favor of upholding the warrantless intrusion. First, the crime appellant was arrested for was murder, clearly a violent crime. Second, the police had more than sufficient probable cause to arrest appellant. Third, as the structure

entered was appellant's residence, police had good reason to believe appellant was present. Fourth, the arresting officers were admitted into the house by appellant's stepfather. Finally, the intrusion at 6:30 a. m. must be considered a daytime search.

On the other hand, police had information that the rifle used in the instant homicide was in the possession of police, as another individual had been arrested and had possession of the rifle. Thus, the police had no reason to believe that appellant was armed at the time of arrest. Even more importantly, the instant homicide pre-dated the date of arrest by approximately three years. There was little need of swift apprehension. In our view, we believe these two factors outweigh the five factors militating in favor of allowing the warrantless intrusion. In *United States v. Reed, supra*, at 425, the court found the time factor to be crucial and we believe that, under these circumstances, the police should have obtained an arrest warrant. We thus believe appellant's arrest was illegal.[2]

 As the arrest of appellant was illegal, we must now determine if that fact requires suppression of appellant's confession. As the United States Supreme Court stated in *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), the test is

". . . whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

Here, appellant confessed within a half hour of being taken to police headquarters. We thus believe the confession was directly related to the illegal arrest, and was not "sufficiently an act of free will." *Commonwealth v. Bishop*, 425 Pa. 175, 182–83, 228 A.2d 661, 665 (1967).

**2.** Further, the police cannot justify the warrantless intrusion on the basis of hot pursuit, *Warden v. Hayden* [supra], or that the arrest was made in public. *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

Appellant also alleges that the trial court erred in telling the jury, in response to a question, that his age had no bearing on his culpability, in admitting the murder weapon into evidence, in allowing testimony concerning appellant's association with one of the individuals arrested with the weapon, and is not allowing him to question prospective jurors as to whether they would be more inclined to believe a police officer than a civilian. Our finding that the arrest was improper makes it unnecessary to reach these issues.

Judgment of sentence reversed and a new trial is granted.

MANDERINO, J., filed a concurring opinion in which ROBERTS, J., joins.

LARSEN, J., filed a dissenting opinion.

EAGEN, C. J., concurs in the result.

MANDERINO, Justice, concurring.

Although I agree with the majority that appellant's arrest was invalid, and that his confession was the product of that illegal arrest, I cannot agree with the majority's conclusion that a willful, deliberate, and premeditated killing may be inferred solely from the use of a deadly weapon on a vital part of the body. *Commonwealth v. O'Searo*, 483 Pa. 286, 396 A.2d 1173 (1978) (concurring opinion of Manderino, J.). *Commonwealth v. O'Searo*, 466 Pa. 244, 352 A.2d 30 (1976) (dissenting opinion of Manderino, J., joined by Roberts, J.). Proof of the use of a deadly weapon on a vital part of the body is sufficient to support an inference of malice only.

In the cases in which we have upheld convictions of murder in the first degree, the evidence established *not only* the use of a weapon on a vital part of the body, *but also* other facts from which the fact finder could conclude that the killing was willful, deliberate, and premeditated. *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844, 848 (1974); *Commonwealth v. Mosley*, 444 Pa. 134, 279 A.2d 174 (1971); *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A.2d 195 (1970); *Commonwealth v. Ewing*, 439 Pa. 88, 264 A.2d 661 (1970); *Commonwealth v. Commander*, 436 Pa. 532, 260 A.2d 773 (1970).

In this case, however, the majority relies on only one fact—the firing of a shot from a distance toward people appellant did not know—to support its conclusion that deliberation and premeditation, as well as malice, can be inferred.

An inference of deliberation and premeditation can be made only if the evidence contains other facts such as:

"(1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, *planning activity.* (2) facts about the defendant's prior relationship and conduct with the victim from which *motive* may be inferred. (3) facts about the *nature of the killing* [which indicate] that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design." (Emphasis in original.) La Fave and Scott Handbook in Criminal Law, pp. 562–568.

The majority's reliance on *Commonwealth v. Kampo*, 480 Pa. 516, 391 A.2d 1005 (1978) for the proposition that malice *and* premeditation can be inferred is misplaced. In *Commonwealth v. Kampo, supra,* two witnesses testified that appellant told them someone was going to die that day. Clearly, this testimony showed a plan to kill someone and therefore, a fact finder could find deliberation and premeditation. Here, there is *no* such additional evidence.

ROBERTS, J., joins in this concurring opinion.

LARSEN, Justice, dissenting.

I dissent and in support thereof quote from Judge Hugh R. Jones of the New York Court of Appeals (that state's highest court) in his majority opinion in *People v. Payton*, 45 N.Y.2d 300, 309–312, 408 N.Y.S.2d 395, 399, 380 N.E.2d 224, 228–230 (1978):

The parties also draw the conflicting inferences (which others have similarly drawn) from holdings and writings of the Supreme Court of the United States and its individual Justices. Defendants infer from *United States v.*

*Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, that an arrest following a warrantless entry in the home is invalid; the People conclude from *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, that the contrary is the case. The fact is that the Supreme Court has not yet resolved the issue, as appears from the explicit statement in the plurality opinion in *Watson* that the question "whether and under what circumstances an officer may enter a suspect's home to make a warrantless arrest" is "still unsettled" (423 U.S., at p. 418, n. 6, 96 S.Ct. 820, at p. 825). Nor has the issue been resolved in our court. In determining now that the warrantless arrests effected in these cases did not violate defendants' constitutional rights to be free from unreasonable searches and seizures, we rely both on what we perceive to be a substantial difference between the intrusion which attends an entry for the purpose of searching the premises and that which results from an entry for the purpose of making an arrest, and on the significant difference in the governmental interest in achieving the objective of the intrusion in the two instances.

In the case of the search, unless appropriately limited by the terms of a warrant, the incursion on the householder's domain normally will be both more extensive and more intensive and the resulting invasion of his privacy of greater magnitude than what might be expected to occur on an entry made for the purpose of effecting his arrest. A search by its nature contemplates a possibly thorough rummaging through possessions, with concurrent upheaval of the owner's chosen or random placement of goods and articles and disclosure to the searchers of a myriad of personal items and details which he would expect to be free from scrutiny by uninvited eyes. The householder by the entry and search of his residence is stripped bare, in greater or lesser degree, of the privacy which normally surrounds him in his daily living, and, if he should be absent, to an extent of which he will be unaware.

Entry for the purpose of arrest may be expected to be quite different. While the taking into custody of the person of the householder is unquestionably of grave import, there is no accompanying prying into the area of expected privacy attending his possessions and affairs. That personal seizure alone does not require a warrant was established by *United States v. Watson* (423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, *supra*), which upheld a warrantless arrest made in a public place. In view of the minimal intrusion on the elements of privacy of the home which results from entry on the premises for making an arrest (as compared with the gross intrusion which attends the arrest itself), we perceive no sufficient reason for distinguishing between an arrest in a public place and an arrest in a residence. To the extent that an arrest will always be distasteful or offensive, there is little reason to assume that arrest within the home is any more so than arrest in a public place; on the contrary, it may well be that because of the added exposure the latter may be more objectionable.

At least as important, and perhaps even more so, in concluding that entries to make arrests are not "unreasonable"—the substantive test under the constitutional proscriptions—is the objective for which they are made, viz., the arrest of one reasonably believed to have committed a felony, with resultant protection to the community. The "reasonableness" of any governmental intrusion is to be judged from two perspectives—that of the defendant, considering the degree and scope of the invasion of his person or property; that of the People, weighing the objective and imperative of governmental action. The community's interest in the apprehension of criminal suspects is of a higher order than is its concern for the recovery of contraband or evidence; normally the hazards created by the failure to apprehend far exceed the risks which may follow nonrecovery.

. . . The American Law Institute's Model Code of Pre-Arraignment Procedure makes similar provision in

section 120.6, with suggested special restrictions only as to nighttime entries. The accompanying commentary states: "To go further and require a warrant or a showing of necessity before police may make a felony arrest on private property even in daytime seems unduly restrictive. Moreover, apart from the specially alarming quality of nighttime entries and apart from search considerations, it is far from clear that an arrest in one's home is so much more threatening or humiliating than a street arrest as to justify further restrictions on the police." (American Law Institute, Model Code of Pre-Arraignment Procedure [1975], p. 307).