J-S15007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| SALEEM SNEAD | |
| Appellant | No. 3444 EDA 2015 |

Appeal from the Judgment of Sentence June 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013827-2012

BEFORE:  BOWES, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 22, 2017**

Saleem Snead appeals from the judgment of sentence of life imprisonment that the trial court imposed after a jury found him guilty of first degree murder, carrying an unlicensed firearm, carrying a firearm in public in Philadelphia, and possessing an instrument of crime.  We affirm.

Appellant and the victim, then seventeen-year-old Paris Talbert, were engaged in an ongoing dispute.  Over the course of several months, Appellant tracked, chased, and threatened Mr. Talbert.  On September 7, 2012, the dispute culminated in gunfire.  At approximately 11 p.m. on the day in question, Appellant found Mr. Talbert in Charles Finley Park, Philadelphia.  Upon locating the victim, who was sitting in the park with his friend, then seventeen-year-old Donald Carter, III, Appellant opened fire on

the two boys and fatally struck Mr. Talbert as he attempted to flee. Mr. Carter escaped unharmed.

That evening, Mr. Carter was transported to the homicide unit, and early the next day, he provided detectives with written and videotaped statements identifying Appellant as the person who shot Mr. Talbert. The detectives thereafter sought and received two search warrants for locations where Appellant was thought to reside. At 6 a.m. on September 9, 2012, the officers executed the first search warrant at a home on East Albanus Street in Philadelphia. Upon entry, Appellant was discovered and apprehended. Appellant's birth certificate was recovered from the house, but the search revealed no further evidence. Similarly, the execution of the second search warrant yielded no evidence linked to Mr. Talbert's murder.

Following his arrest, Appellant was transported to the homicide unit for questioning. After being provided his **Miranda**[1] rights, Appellant indicated that he wished to supply the detectives with a statement without the aid of counsel. He provided a written statement wherein he acknowledged his constitutional rights, and alleged that he had been present for Mr. Talbert's murder, but that an accomplice, Keith Brandford, had killed the victim. Subsequently, Appellant was charged with the aforementioned offenses.

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Appellant filed a pre-trial motion requesting that the court suppress his inculpatory statements contending that they were the fruits of an illegal arrest, or alternatively, that he had not been adequately apprised of his constitutional rights. Appellant also entreated the court to suppress Mr. Carter's out-of-court identification, alleging that the police utilized an unduly suggestive identification procedure. During pre-trial proceedings, the Commonwealth asked to introduce evidence of prior bad acts, consisting of two previous incidents where Appellant pursued Mr. Talbert, once while carrying a firearm.

On June 1, 2015, the court held a hearing on the pre-trial motions, and thereafter, it denied Appellant's motion to suppress. The court permitted the Commonwealth to proffer evidence of the previous encounters between Appellant and the victim. The case proceeded immediately to a jury trial. On June 5, 2015, the jury returned a verdict of guilty on all counts, and the court immediately imposed a sentence of life in prison.

Appellant filed a timely post-sentence motion, which was denied by operation of law on October 7, 2015. Trial counsel filed a motion to withdraw, which was granted, and the court granted appeal counsel's motion to file an appeal *nunc pro tunc*. Appellant complied with the directives of Rule 1925(b) and the court authored its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant presents five issues for our consideration:

I.    Did the lower court err by permitting the Commonwealth to introduce evidence of Appellant's prior bad acts in which he sought out Talbert, though those prior bad acts were irrelevant to the matters at issue and unduly prejudiced [A]ppellant?

II.   Did the lower court abuse its discretion by failing to grant a mistrial when the Commonwealth published highly prejudicial evidence to the jury regarding Appellant's prior gun conviction where the Commonwealth conceded the evidence was inappropriate?

III.  Did the lower court err in denying Appellant's motion to suppress his custodial statement, as it was given after an illegal arrest and Appellant did not voluntarily waive his right against self-incrimination prior to giving the statement?

IV.   Did the Commonwealth fail to prove that the single photograph out-of-court identification procedure employed was reliable and further was that procedure was wholly unreasonable?

V.    Did the lower court improperly allowed [sic] Carter to testify as to hearsay statements of identification ostensibly made by Talbert shortly before his death?

Appellant's brief at 4.

As Appellant's first and fifth issues pertain to the admission of evidence, we consider them together.  The trial court's evidentiary rulings are afforded great deference.  Thus, "[w]e give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion." *Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa.Super. 2015) (citation omitted).  An abuse of discretion "is not merely an error in judgment, but an

overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id*.

Appellant first assails the trial court's decision to allow the Commonwealth to offer evidence of his past interactions with the victim. We observe,

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that the defendant acted in conformity with those past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. In determining whether evidence of prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa.Super. 2016) (internal citation omitted); Pa.R.E. 404(b).

The trial court permitted the Commonwealth to offer evidence pertaining to an encounter on March 3, 2012, where Appellant chased Mr. Talbert while brandishing a firearm, and another incident on April 7, 2012, where Mr. Talbert fled after observing Appellant driving towards him. The court determined that this evidence was properly admitted to prove "motive, identity of the shooter, and to establish the natural sequence of events leading up to the murder." Trial Court Opinion, 4/12/16, at 13. It noted that the evidence supported that the parties were embroiled in an ongoing

- 5 -

dispute, which directly established motive, and that the probative value of such evidence outweighed any prejudicial effect. *Id*.

Appellant first argues that the past acts were not probative of Appellant's motive since, although they evince an intent to seek out the victim, they did not shed light on the motivation behind their quarrel. In addition, Appellant maintains that the evidence did not identify Appellant as the shooter, since the circumstances surrounding the prior encounters were not sufficiently similar to those encompassing Mr. Talbert's death to warrant an exception to Rule 404(b). Finally, Appellant asserts that the evidence was not sufficiently probative of the natural sequence of events as he admitted that he was engaged in a dispute with the victim, and thus, that evidence was cumulative and unnecessarily prejudicial.

We find the evidence of Appellant's prior acts was admissible under the *res gestae* exception, and, therefore, the trial court did not abuse its discretion in allowing the relevant testimony. This Court previously explained the *res gestae* exception in **Commonwealth v. Brown**, 52 A.3d 320 (Pa.Super. 2012). We stated, "where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "res gestae" exception)[,]" the evidence may be admissible. **Id**. at 326. Moreover, relying on Supreme Court precedent, we observed that "the '*res gestae*' exception to the general proscription against evidence of other crimes, is

- 6 -

also known as the 'complete story' rationale, *i.e.*, the evidence of other criminal acts is admissible to 'complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" ***Id***.

The *res gestae* exception is subject to a balancing test to ensure the probative value of the evidence outweighs its prejudicial impact. Thus, we

> consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and the "degree to which the evidence probably will rouse the jury to overmastering hostility."

***Id***.

Here, the probative value of the two prior instances where Appellant sought out the victim clearly outweighed its prejudicial impact. Appellant was convicted of murder after his ongoing dispute with the victim ended in gunfire. Appellant was found to have stalked Mr. Talbert late at night in a park near the victim's home. The two contested incidents occurred months prior to the shooting, and demonstrated Appellant's settled desire to track down and confront Mr. Talbert. The fact that Appellant admitted to quarreling with Mr. Talbert does not render this evidence as cumulative, but rather, it was a necessary means to inform the jury of the context, history, and natural development of the hostility between Appellant and the victim.

In addition, evidence of the two past incidents was indispensable in apprising the jury as to both the identity of the shooter and Appellant's

motive. Although Appellant conceded that he was present at the time of the shooting, he denied firing the weapon. The evidence of the two men's past confrontations refuted Appellant's claim by tending to show that Appellant, rather than Mr. Branford, tracked Appellant to the park late at night with the intent to kill him, and, thereafter, that he indeed shot Mr. Talbert to resolve their differences. Hence, we find the trial court did not abuse its discretion in permitting this evidence, and Appellant is not entitled to relief.

Appellant's fifth claimed error involves the trial court's decision to permit Mr. Carter to testify regarding the statements made by the victim immediately prior to his death. As noted above, our standard of review is an abuse of discretion. *Talbert*, *supra*. Appellant directs our attention to the following testimony by Mr. Carter, claiming it represents inadmissible hearsay:

> Prosecutor: Mr. Carter, did you have a chance to read the five lines below, and this was from the morning of this incident or the morning after this incident. I'd asked you earlier what you remember [Mr. Talbert] saying when [Appellant] was walking up. Reading this now, do you remember everything that he said to you concerning what he said when [Appellant] walked up?
>
> Mr. Carter: Yes.
>
> Prosecutor: And what did he say?
>
> Mr. Carter: He said, That's Saleem.

Appellant's brief at 38; N.T. Trial, 6/2/15, at 89-90. Appellant posits that Mr. Carter's testimony was offered for the truth of the matter asserted, and that not one of the enumerated exceptions to the hearsay rule apply.

Hearsay is any statement, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." **Commonwealth v. Rayner**, 153 A.3d 1049, 1057 (Pa.Super. 2016); Pa.R.E. 801(c). The trial court acknowledged that the victim's statement identifying Appellant prior to his shooting, as relayed to the court by Mr. Carter, constituted hearsay. Nevertheless, it reasoned that the statement was admissible pursuant to the present sense impression exception to the hearsay rule contained in Pa.R.E. 803(1).

The rule against hearsay does not exclude evidence of a statement made by a person "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa.R.E. 803(1). The trustworthiness of the declaration "depends upon the timing of the statement . . . [it] must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." **Commonwealth v. Gray**, 867 A.2d 560, 571 (Pa.Super. 2005) (citation omitted).

Whether Mr. Talbert's statement qualifies as a present sense impression requires us to decide if it came so shortly after the events in question that it is unlikely that he would have the opportunity to fabricate a

lie. Here, Mr. Talbert stated "That's Saleem," as a figure approached him and Mr. Carter in the park. Immediately thereafter, the assailant began shooting. We find Mr. Talbert's contemporaneous statement satisfies the timing requirement of the present sense impression so as to be deemed trustworthy. Thus, the trial court did not abuse its discretion in permitting the victim's observation.

In Appellant's second issue, he argues that the lower court abused its discretion when it failed to grant a mistrial after the Commonwealth mistakenly published prejudicial evidence to the jury. The evidence in question was contained in Appellant's statement to police. The statement was displayed on a screen, and the Commonwealth inadvertently included the portion of the statement indicating Appellant had served time in prison. We afford the trial court broad discretion in ruling on a motion for mistrial. The court must determine

> whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with the law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Jaynes*, 135 A.3d 606, 615, (Pa.Super. 2016 (brackets and citations omitted).

Appellant contends that he suffered unfair prejudice when the Commonwealth inadvertently published Appellant's report that the murder occurred "shortly after he was released from prison on a gun charge." Appellant's brief at 22. Defense counsel objected and moved for a mistrial. The court offered to provide the jury with an immediate curative instruction, but defense counsel rejected this suggestion due to a concern that it would highlight the prejudicial information. Instead, defense counsel requested that the general prior bad acts limiting instruction be given with the jury's charge. Nevertheless, Appellant argues the limiting instruction was not sufficient to overcome the prejudice flowing to Appellant by the erroneous publication of his concession.

The trial court noted that the disputed portion of Appellant's statement "was only a small portion of what was displayed on the screen, and when noticed, the statement was immediately removed from the screen and the jury removed from the room." Trial Court Opinion, 4/12/16, at 14. The court reasoned that any prejudice caused by the Commonwealth's mistake was cured by the limiting instruction contained within the jury charge, since, "it is not clear that the jury even saw the complained of portion of the statement," and thus, "there is no reason to believe that the jury did not follow the court's instructions." *Id*. at 15.

Here, the Commonwealth mistakenly presented a prejudicial portion of Appellant's statement to the police. Following an objection by defense

counsel, the court denied a motion for mistrial, but agreed to offer the following jury charge:

> Now, you've heard evidence that the defendant was involved in acts not charged and for which he is not on trial. You must only consider this evidence only for its bearing, if any, on the question of the defendant's intent, identification and motive, and for no other purpose. You must not consider this evidence as evidence of guilt of the crime for which the defendant is now on trial.
>
> You must not regard this evidence as showing the defendant is a person of bad character or criminal tendency from which you might be inclined to infer guilt.

N.T. Trial, 6/5/15, at 116-117.

Upon review of the record, we find that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial. We agree with the trial court that the offending statement was briefly presented to the jury. Moreover, the statement was within a larger portion of text and was not read into the record. When the mistake was discovered, the text had been visible for only a short time and it was promptly removed. Further, the jury charge directed it to consider any information elicited of Appellant's past behavior only for its bearing on his intent, identification, and motive. The jury is presumed to follow such instructions. *Commonwealth v. Mason*, 130 A.3d 601, 673 (Pa. 2015) (citation omitted). Since the record does not disclose that Appellant suffered prejudice from the brief reference to his prior conviction, his second claim is without merit.

Appellant's third issue relates to the denial of his motion to suppress. Our standard of review of a denial of a motion to suppress is limited to

> determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Since] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Postie*, 110 A.3d 1034, 1039 (Pa.Super. 2015) (citation omitted).

Appellant's argument is two-fold. First, he claims that he was arrested inside his home without an arrest warrant or exigent circumstances in contravention of his constitutional rights under the United States and Pennsylvania constitutions. Moreover, Appellant maintains, the Commonwealth failed to prove the arresting officers had probable cause for the arrest since Appellant's identification as the perpetrator of the crime was corroborated by only a single eyewitness.

At the suppression hearing, the Commonwealth offered the testimony of Detective James Burns, who was assigned to assist in the investigation of Mr. Talbert's murder. Detective Burns recounted his interview with Mr. Carter during the morning following Mr. Talbert's death. Detective Burns related that Mr. Carter, who was seventeen years old at the time, identified Appellant as the shooter by name and indicated that he had known him

- 13 -

since sixth grade. N.T. Suppression Hearing, 6/1/15, at 18-19. Mr. Carter provided a physical description and knew Appellant's home neighborhood and other places he frequented. *Id*. at 19-20. Upon being shown a photograph of Appellant, Mr. Carter immediately recognized him as the shooter. *Id*. at 20-21.

Based upon this information, two search warrants were obtained for locations wherein Appellant was believed to reside. Detective Burns reported that Appellant was discovered and apprehended while the detective and other officers executed the first search warrant for a residence located on West Albanus Street. *Id*. at 25. Appellant's birth certificate was also recovered from this location. *Id*. at 26.

Appellant relies on **Commonwealth v. Williams**, 396 A.2d 1177 (Pa. 1978), for the proposition that the **Dorman** factors[2] militate in favor of finding that his constitutional rights were violated by his warrantless arrest within his home. We find that **Williams** is not dispositive, and thus, that the **Dorman** factors are not applicable.

_____

[2] In **Dorman v. United States**, 435 F.2d 385 (D.C. Cir. 1970) (*en banc*), the Circuit Court of the District of Columbia detailed factors that should be analyzed in determining whether exigent circumstances permit the warrantless arrest of a suspect within his own home. Those factors include: a grave offense; reasonable belief that the suspect is armed; a clear showing of probable cause; a strong reason to believe the suspect is present in the premises being entered; a likelihood the suspect will escape if not swiftly apprehended; peaceful entry; and time of entry. *Id*. at 392-393.

In **Williams**, the court considered, *inter alia*, whether an arrest following the warrantless entry into a suspect's house violated the Fourth Amendment. At the time of the police's entry and apprehension of the suspect, they had neither a search warrant nor an arrest warrant. The court noted that it was a matter of first-impression whether "an arrest warrant is required to effectuate a valid arrest inside an arrestee's home." **Williams**, **supra** at 1179. The court relied upon the Circuit Court of the District of Columbia's analysis in **Dorman v. United States**, 435 F.2d 385 (D.C. Cir. 1970) (*en banc*), in determining that the suspect's in-home warrantless arrest, where the authorities entered the domicile for the purpose of effectuating that arrest, was illegal.

Following **Williams**, **supra**, the United States Supreme Court clarified the constitutional implications of an in-home arrest without an arrest warrant, noting, "[the **Dorman** court] reasoned that the constitutional protection afforded to the individual's interest in the privacy of his own home is equally applicable to a warrantless entry **for the purpose of arresting a resident of the house**[.]" **Payton v. New York**, 445 U.S. 573, 588 (1980) (emphasis added). It ruled that, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent existent circumstances, that threshold may not reasonably be crossed **without a warrant**." **Id**. at 590 (emphasis added). Ultimately, the Supreme Court concluded that an "an arrest warrant founded on probable cause implicitly carries with it the limited

- 15 -

authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id*. at 603. The High Court's resolution in *Payton* underscored that this Court's analysis should first center upon whether law enforcement's entry into a suspect's home is constitutionally infirm before considering the legality of any ensuing arrest.

This Court has since clarified the holding in *Payton*, finding that "[w]hile *Payton* stands for the proposition that the Fourth Amendment prohibits a warrantless and nonconsensual entry into a suspect's home in order to make a routine arrest, it does not prohibit warrantless arrest from occurring within a home." *Commonwealth v. Gelber*, 592 A.2d 672, 678 (Pa.Super. 1991). In *Gelber*, we found that a warrantless arrest within the defendant's home did not implicate *Payton* since the officer could have arrested the suspect outside the home, but entered it only to preserve evidence within. *Id*. at 678-679. Thus, as in *Gelber*, the circumstances herein are distinguishable from *Williams*, *supra*.

Instantly, Appellant does not contest the validity of the search warrant used to gain entry to his house or the reliability of Mr. Carter's identification of him as the perpetrator of the crime. Instead, he maintains that the Commonwealth cannot justify his warrantless arrest when viewed in light of the *Dorman* factors, and that a single eyewitness is not sufficient to create clear probable cause for the arrest without further corroboration. However, in light of *Payton*, *supra*, Appellant erroneously applies the *Dorman* factors

to analyzing whether Appellant's arrest was unconstitutional, rather than contesting the legality of the police's entry into his house.

Further, *Gelber*, *supra*, explains that *Payton* does not bar a warrantless arrest within a home, unless entry was secured in order to effectuate that arrest. Here, the police entered Appellant's residence pursuant to a valid search warrant to discover evidence linked to Mr. Talbert's homicide. After doing so, the officers located and apprehended Appellant within the home. Thus, the officers were legally within Appellant's residence at the time of his arrest.

Additionally, Appellant's arrest was supported by probable cause. We consider the totality of the circumstances in evaluating whether probable cause exists to justify a warrantless arrest. *Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014). We note that "[p]robable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed," and must be "viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." *Id*. (citation omitted).

Since Mr. Carter provided a reliable eyewitness identification of Appellant to Detective Burns, who was one of the arresting officers,

Appellant's arrest was supported by probable cause.[3]  Mr. Carter supplied Appellant's name and where he lived, and claimed to have known him for years before identifying him in a picture provided by Detective Burns.  As such, Appellant's arrest was supported by probable cause.  ***See Commonwealth v. Dozier***, 99 A.3d 106 (Pa.Super. 2014) (finding warrantless arrest supported by probable cause and stating "[w]e would struggle to find a more detailed description of an assailant than an immediate identification by name by a victim who knew the suspect for many years[.]"); ***Commonwealth v. Simmen***, 58 A.3d 811 (Pa.Super. 2008) (finding warrantless entry while investigating car accident permitted by third party consent and subsequent warrantless arrest inside defendant's home supported by probable cause).

Second, Appellant alleges his inculpatory statements should have been suppressed because he did not voluntarily waive his ***Miranda*** rights. Appellant claims that he requested an attorney prior to offering a statement to police, but that request was denied by Detective Burns.  Appellant emphasizes the following statement provided by Detective Burns at the suppression hearing in support of this allegation:

> certainly, like, he had some kind of reluctance with the idea of signing anything or signing any statements.  That didn't last very

---

[3] We discuss the reliability of Mr. Carter's identification of Appellant in the text *infra*.

long. It was a little of conversation back and forth about that, where, eventually, he did agree to give a written interview.

Appellant's brief at 33; N.T. Suppression Hearing, 6/1/15, at 37. Appellant argues that the detective's testimony lends credence to Appellant's assertion that he entreated the officer for an attorney prior to giving his statement. We disagree.

The trial court credited Detective Burn's testimony that Appellant agreed to speak to him without a lawyer, and that he did not request a lawyer thereafter. N.T. Suppression Hearing, 6/1/15, at 33; 35. Appellant testified that he could not remember when he asked for a lawyer, but that he was apprised of, and understood his *Miranda* rights. N.T. Suppression Hearing, 6/2/15, at 44. Further, upon review of the certified record, we find that Appellant acknowledged that he received, understood, and waived his *Miranda* rights. Appellant admitted as much in his written statement to police, wherein he signed and initialed his recognition of those rights prior to providing his statement. As the evidence of record supports the suppression court's finding that Appellant waived his right to counsel, this claim does not warrant relief.

Appellant's fourth issue assails the trial court's refusal to suppress Mr. Carter's out-of-court identification of Appellant. He concedes that Mr. Carter provided Detective Burns with Appellant's name and physical description, but complains that the utilization of a single photograph was unduly suggestive.

We remain mindful of our standard of review for a trial court's denial of a motion to suppress. **Postie**, **supra**. In addition, suppression of a pre-trial identification is warranted where it prevents police misconduct. **Commowealth v. Lark**, 91 A.3d 165, 168-169 (Pa.Super. 2014). Suggestiveness is but one factor used to determine the admissibility of a pre-trial identification as the court must consider the totality of the circumstances in rendering a suppression ruling. **Id**. at 168. As such, "[i]dentification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." **Commonwealth v. Stiles**, 143 A.3d 968, 978 (Pa.Super. 2016) (citation omitted).

Here, we find that the police's reliance on a single photograph to confirm Appellant's identify was not unduly suggestive. As noted above, Detective Burns credibly testified that Mr. Carter provided him with extensive information regarding the identity of Mr. Talbert's assailant, claiming that he had known Appellant "for a number of years." N.T. Suppression Hearing, 6/1/15, at 19. Mr. Carter provided additional identifying information and at no point did he express doubt as to the suspected offender. Detective Burns then supplied a single photo to confirm, for the police's sake, the identity of the shooter. When viewing Mr. Carter's statements under the totality of the circumstances, a single-photo

could not have been "so impermissibly suggestive as to give right to a very substantial likelihood of irreparable misidentification," ***Stiles***, ***supra***, since Mr. Carter had already identified Appellant and the photo was used merely to substantiate the information offered by Mr. Carter. Hence, this claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: _5/22/2017_