502 A.2d 167

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Rodger McFEELY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 19, 1985.

Decided Dec. 12, 1985.

John H. Corbett, Jr., Paulette J. Balogh, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Kemal Alexander Mericli, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In this case a confessed killer seeks to have his conviction for second degree murder reversed and a new trial granted on the theory that his confession should have been suppressed. McFeely's argument is that his confession was obtained as a result of an illegal arrest, and that the decision of this Court in *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), invalidating warrantless arrests made in the home of the arrestee, absent exigent circumstances, should be applied retroactively to his case. McFeely's arrest occurred in the early hours of the morning, without a warrant, in a third-party dwelling.

McFeely was arrested at 5:25 a.m. on February 6, 1977 in the home of his brother, after police received information that McFeely had shot and killed decedent. The informant was McFeely's co-actor. After McFeely was taken to the police station, he was told that police had the suspected murder weapon in their possession and that they had his co-actor in custody. McFeely requested to see both the gun and the co-actor. Both were produced, and McFeely subsequently gave a statement to the police.

According to McFeely's confession, he and the co-actor devised a plan to steal drugs from the decedent, whereby McFeely, posing as a police officer, would gain admittance to decedent's apartment and confiscate decedent's drugs. McFeely, acting pursuant to this plan, carrying a badge and a loaded revolver, knocked at the door of decedent's apartment and was admitted. A struggle for his loaded gun ensued, and decedent was shot. McFeely then took marijuana from the decedent's apartment, ran from the scene,

and discarded his gun and the marijuana as he ran. Later McFeely and the co-actor retrieved both the gun and the marijuana. The co-actor took the gun and the pair split the marijuana.

McFeely's first trial for murder, robbery, firearms violations, and criminal conspiracy was begun on September 14, 1977. A mistrial was declared the next day, and subsequently, McFeely's trial counsel withdrew from the case. New counsel filed post-trial motions, which were denied, and on April 8, 1980, McFeely's second trial commenced. A jury sitting in the Court of Common Pleas of Allegheny County, Criminal Division, convicted him of second degree murder and other charges contained in the second information. Second counsel filed post-trial motions, and then a newly retained third counsel filed additional post-trial motions which, for the first time, asserted that McFeely's arrest was illegal. Post-trial motions were denied and McFeely was sentenced to life imprisonment. Superior Court, 328 Pa.Super. 553, 476 A.2d 62, affirmed the judgment of sentence, and present counsel, McFeely's fourth, filed the present Petition for Allowance of Appeal before this Court.

■ The principal question to be answered on this appeal is whether we are to give retrospective effect to a decision of this Court in *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), which invalidated warrantless arrests made in the home of the arrestee, absent exigent circumstances. The *Williams* case relied on the Fourth Amendment to the United States Constitution, not state law, to invalidate such an arrest. Two years later, in *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), we addressed the question of whether the rule in *Williams* was to be applied retroactively, and we held that the *Williams* rule was not to be applied to arrests made before November 18, 1978, the date on which *Williams* was filed. *Id.*, 490 Pa. at 473, 417 A.2d at 136. McFeely's arrest occurred on February 6, 1977.

Although *Miller* would seem to settle the question of whether the *Williams* rule can be applied to the McFeely case, the question of retroactivity arises now because of two decisions of the United States Supreme Court. Two years after our decision in *Williams*, the United States Supreme Court, in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1981), announced a decision on warrantless arrests in the home which mirrored our earlier decision in *Williams*. Such warrantless arrests are not permitted under the Fourth Amendment, absent exigent circumstances, when they take place in the arrestee's home. In a subsequent case, *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), a sharply divided Court held that its decision in *Payton* was to be given retroactive effect. This holding, of course, contradicts our holding in *Miller*, and gives rise to the question in this case as to whether we are bound by the decision in *Johnson* to reverse our earlier decision in *Miller*.

As a threshold matter, we observe that the rule of the United States Supreme Court in *Johnson* that their *Payton* case is to be given retroactive effect does not *compel* a reversal in *Commonwealth v. Miller*. It is axiomatic that this Court is bound by the United States Supreme Court's interpretation of minimum standards required by the Constitution of the United States. However, the *Johnson* Court itself, citing its own prior decisions, states: " '[T]he federal constitution has no voice upon the subject' of retrospectivity." 457 U.S. at 542, 102 S.Ct. at 2582, 73 L.Ed.2d at 208. This Court has also observed: " '[T]he Constitution neither prohibits nor requires retrospective effect' for decisions expounding new constitutional rules affecting criminal trials." *Commonwealth v. Miller*, 490 Pa. at 472, 417 A.2d at 136. (Citations omitted.)

Moreover, the decision in *United States v. Johnson*, which gives retroactive effect to *Payton*, is endorsed by what Mr. Chief Justice Nix has referred to as "[a] tenuous majority" of the United States Supreme Court. *Commonwealth v. Geschwendt*, 500 Pa. 120, 130, 454 A.2d 991, 996 (1982). This Court, of course, accords deference to the

Opinions of the United States Supreme Court, but in a case such as this, in which we are not bound by that Court's majority view, we are constrained to agree with the dissenters in *Johnson* that the majority's decision in that case not only undermines a heretofore consistent body of law, but also that it does so under the guise of a reasoned analysis which is actually no more than "an exercise in line drawing." 457 U.S. at 568, 102 S.Ct. at 2597, 73 L.Ed.2d at 226. (Dissenting Op. of Mr. Justice White). Our rationale in *Commonwealth v. Miller,* which supported a quite different view of retroactivity, was based on *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), in which a majority of the United States Supreme Court agreed on the factors which control a decision on retroactivity:

> The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice.

We then went on to discuss the applicability of these concerns to cases involving the exclusionary rule:

> The purpose to be served by the new rule should receive primary consideration. "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect." *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971) (plurality opinion). Conversely, the same standard "strongly supports prospectivity for a decision amplifying the evidentiary exclusionary rule," *Desist [v. United States ]* supra 394 U.S. [244] at 249, 89 S.Ct. [1030] at 1033 [22 L.Ed.2d 248], the primary purpose of which is to deter unlawful police conduct.

490 Pa. at 472–73, 417 A.2d at 136. We continue to believe that the considerations set out in *Miller* provide a sound basis for deciding when a rule of law is to be given retroactive effect, and thus, we decline to adopt the view of

the United States Supreme Court in *United States v. Johnson.*

■ However, even if we were to favor retroactive application of the *Williams-Payton* law of warrantless arrest, McFeely's confession would not be automatically suppressed. The basic law of the suppressibility of evidence which is obtained as a result of an illegal arrest was articulated in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), where the United States Supreme Court held that certain evidence seized as a result of an illegal arrest must be suppressed. However, as this Court stated in *Commonwealth v. Bishop,* "It does not necessarily follow that all confessions or admissions secured from an illegally arrested person are per se inadmissible as trial evidence." 425 Pa. 175, 182, 228 A.2d 661, 665 (1967). Whether particular evidence is admissible will be determined by the facts of each case. In *Commonwealth v. Bogan,* 482 Pa. 151, 393 A.2d 424 (1978), we set out factors which are to be considered in making this determination:

> The United States Supreme Court in *Brown v. Illinois,* supra, noted several factors to be considered in scrutinizing an individual case: (1) whether *Miranda* warnings were given; (2) the "temporal proximity of the arrest and the confession"; (3) "the presence of intervening circumstances"; and, (4) "the purpose and flagrancy of the official misconduct". The voluntariness of the statement is, of course, a threshold requirement, *Brown v. Illinois,* supra 422 U.S. at 604, 95 S.Ct. at 2264, and the confession must also be "free of any element of coerciveness due to the unlawful arrest." *Commonwealth v. Bishop,* supra [228 A.2d] at 666. The burden of showing admissibility rests on the prosecution. *Brown v. Illinois,* supra; *Commonwealth v. Barnett* [471 Pa. 34, 369 A.2d 1180 (1977)], supra; *Commonwealth v. Wright* [460 Pa. 247, 332 A.2d 809], supra; *Commonwealth v. Bishop,* supra.

482 Pa. 157, 393 A.2d at 427.

The suppression record supports the determination that McFeely was given *Miranda* warnings, and that his confes-

sion did not occur immediately upon arrest, but rather was the product of the intervening circumstances of being confronted with the suspected murder weapon and his co-conspirator, who told him, "You're the one that shot him and I told the police the truth and you tell the police the truth." There is no claim that the confession was involuntary or that it was coerced due to the arrest. Moreover, there is no element of police overreacting in the case: the police failed to secure an arrest warrant because they believed—correctly—that the current law did not require one. Thus, the Commonwealth has met its burden of showing that the connection between the warrantless arrest and the subsequent confession was "so attenuated as to dissipate the taint," *Wong Sun,* 371 U.S. at 491, 83 S.Ct. at 419, and thus, that the confession was admissible.

We conclude, therefore, that the confession was not erroneously admitted into evidence, and in any case, we decline to overrule our decision in *Commonwealth v. Miller,* supra, which holds that the rule in the *Williams* case has no retroactive application.

Order of the Superior Court is affirmed.

LARSEN, J., filed a concurring opinion.

HUTCHINSON, J., filed a concurring opinion.

ZAPPALA, J., filed a concurring opinion.

LARSEN, Justice, concurring.

I concur in the result, but write separately because I think it is unnecessary for the majority to even discuss the issues which it considers to be decisive in this case. I would hold that appellant has waived his right to challenge both the legality of his arrest and the effect of any illegality, and would, therefore, not reach either of the issues discussed in the majority opinion. *See: Pa.R.A.P. 302(a).*

HUTCHINSON, Justice, concurring.

I join that portion of the majority opinion which states that appellant's confession is admissible because it was sufficiently purged of taint from the illegal arrest. However, I cannot agree with the opinion's analysis of *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), and its effect. In that section of its opinion, the majority concludes we are not bound by *Johnson* because the tenuous majority which it commanded concluded that the question of retroactivity is not governed by the United States Constitution.

The application of newly announced judge-made law to pending cases is often loosely referred to as a "retroactive" application of the newly stated rule of decision. Somewhat cloudy distinctions are then drawn between those rules which were foreshadowed and those which were not. *Johnson*, 457 U.S. at 549, 551, 102 S.Ct. at 2587. Such loose reference confuses the normal and proper common law application of rules of decision to all cases not finally decided at the time the rule is announced with the relatively recent, and more novel, notion that rules of decision created by the federal courts in a constitutional context after a conviction has become final, should be applied in collateral attack, on that final conviction.

To my mind, it is only the application of new rules of decision to final judgments of conviction in a collateral attack on them which is retroactive in the common law sense. Such retroactivity constitutes an abnormal departure from common law principles and should be allowed only for the most compelling constitutional reasons. However, *Johnson*, like this case, involved a direct appeal from a conviction and its rule of decision is thus properly applied to our judgment of it. This appellant, whose conviction has not yet become final, seems to me entitled to the benefit of his Fourth Amendment rights as they are presently understood. If his case had come before us on appeal from an order entered in a post-conviction proceeding or other collateral attack on his conviction, I believe principles of finality

should properly limit him to his Fourth Amendment rights as they were understood when he was convicted.

Since this case is on direct appeal, the majority necessarily uses "retroactivity" in the loose sense referred to, in order to refuse application of a controlling rule of decision announced before appellant's conviction was final. I cannot agree with that broad use of the term. *See United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801).

Even if I were to accept that, however, I would be compelled on the facts of this case to disassociate myself from the majority's position because the United States Supreme Court has decided the specific issue of whether the constitutionally based rule of decision it announced in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1981), should be applied to pending cases. It did so by expressly holding that the rule restricting warrantless searches must be so applied. *See Johnson, supra.* I think that decision is specific and requires us to apply the *Payton* prohibition on warrantless searches of a home to this case, despite our earlier holding in *Commonwealth v. Miller,* 490 Pa. 457, 417 A.2d 128 (1980), that this particular prohibition, which we foreshadowed in *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177 (1978), should have only prospective application.

ZAPPALA, Justice, concurring.

I concur in the result, although I do not agree with Justice Flaherty's discussion of the effect of *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). In that case the United States Supreme Court held that its ruling in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), invalidating warrantless arrests in the home, was to be applied "retroactively to all convictions that were not yet final at the time the decision was rendered." *Johnson,* 457 U.S. at 562, 102 S.Ct. at 2594.

Although this Court had previously announced a rule identical in substance to the rule announced in *Payton, Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 508

(1978), we had determined that our holding would be given prospective effect, *Commonwealth v. Miller,* 490 Pa. 457, 417 A.2d 128 (1980).

It is true that the federal Constitution neither prohibits nor requires that decisions be given retrospective effect. We are, therefore, free to resolve that question in the first instance, as we did in *Miller,* even where the rule whose application is questioned is based on our interpretation of the federal constitution, as was *Williams.* Nevertheless, the United States Supreme Court has reached a contrary conclusion with regard to the application of its rule in *Payton,* requiring that it be applied to all cases not yet final at the time *Payton* was decided. "Final", the Court explained, means " 'where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed [or a petition for certiorari finally denied ...].....' " *Johnson,* 457 U.S. at 543, n. 8, 102 S.Ct. at 2583, n. 8, *quoting Linkletter v. Walker,* 381 U.S. 618, 622, n. 5, 85 S.Ct. 1731, 1734, n. 5, 14 L.Ed.2d 601 (1965). Because the time for certiorari has not elapsed, McFeely's case is "not yet final" within the meaning of *Johnson.* Were we to follow *Miller* and deny application of the *Williams* rule, absent other defects in his case McFeely's petition for certiorari to the United States Supreme Court would be governed by *Johnson* and application of *Payton* would be required.[1]

1. It is recognized that *Johnson* was a federal case arising out of the Central District of California. It would be erroneous, however, to view that decision as simply an exercise of the Supreme Court's supervisory power over federal courts not binding on us. By its terms, *Johnson* applies to "all cases." Although hardly a paradigm of clarity, the Opinion in *Johnson* offers several indications that state as well as federal cases are contemplated. *See, e.g.,* 457 U.S. at 557, n. 17, 102 S.Ct. at 2591, n. 17; 457 U.S. at 562, n. 20, 102 S.Ct. at 2594, n. 20. More to the point, in an analogous situation not involving the Fourth Amendment the Court recently reversed the Louisiana Supreme Court which had refused to give retroactive effect to a United States Supreme Court decision filed while the case was pending appeal in the state court. *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). "[U]nder the rationale of our decision today, the question is whether the conviction became final before *Edwards* was decided. As we hold, if a case was pending on direct

We need not reach the point of this potential conflict, however, to decide the present appeal. Retroactive application, even where required, is only appropriate in cases not yet final where the issue has properly been preserved. *Commonwealth v. Hernandez,* 498 Pa. 405, 446 A.2d 1268 (1982); *see also, Shea v. Louisiana,* 470 U.S. 51, ——, n. 4, 105 S.Ct. 1065, 1070, n. 4, 84 L.Ed.2d 38 (1985) (if case pending on direct review at time of *Edwards,* appellate court must retroactively apply *Edwards,* "subject, of course, to established principles of waiver, harmless error, and the like.") The issue of the illegality of the Appellant's arrest was not raised in the pretrial motions filed by Appellant's first counsel, but was first presented in supplemental post-trial motions filed by Appellant's third counsel following the second trial on these charges. Even then, it was acknowledged that the issue could not properly be considered except in the context of ineffective assistance of prior counsel for failure to raise it. Indeed, post-trial counsel apparently abandoned the argument that his predecessors had been ineffective, neither raising it in his brief nor arguing it to the court. Such action was, of course, eminently reasonable in light of the state of the law at the time of counsel's representation. Because *Williams* had not been decided at the time the motion to suppress was filed, first counsel could not be deemed ineffective for failure to anticipate its effect, *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 (1977); and because *Miller* was the controlling precedent at the time of post-trial motions, second and third counsel cannot be faulted for not pursuing efforts to have *Williams* applied retroactively.

For the foregoing reasons, I do not believe this Appellant is entitled to the benefit of retroactive application of *Payton* as required by *Johnson.* I express no view as to whether application of the rule on these facts would require suppression of his statements, were he entitled to have the rule applied to his case.

review at the time *Edwards* was decided, *the appellate court must give retroactive effect to Edwards ..." Id.* at ——, n. 4, 105 S.Ct. at 1070, n. 4 (emphasis added).