**Charles GILMORE**

v.

**Ronald MARKS, Commissioner and the Attorney General of the State of Pennsylvania, and the District Attorney of Philadelphia, Appellants.**

**No. 85–1500.**

United States Court of Appeals, Third Circuit.

Argued Feb. 20, 1986.

Decided Aug. 22, 1986.

Rehearing and Rehearing In Banc Denied Sept. 17, 1986.

---

Eric B. Henson, Deputy Dist. Atty., Donna G. Zucker (Argued), Asst. Dist. Atty., Edward G. Rendell, Dist. Atty., Philadelphia County, Philadelphia, Pa., for appellants.

Burton A. Rose (argued), Peruto, Ryan & Vitullo, Philadelphia, Pa., for appellee.

Before WEIS, SLOVITER, Circuit Judges, and ZIEGLER, District Judge *.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us is the appeal of the Commonwealth of Pennsylvania from the district court's decision to grant a writ of habeas corpus ordering the release of the appellee, Charles Gilmore. The issue presented is whether the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars federal habeas corpus review of a state court's determination that a violation of the habeas petitioner's Fourth Amendment rights constituted harmless error.

### I.

The events underlying this appeal stretch back 13 years. In 1973, Ollie Chesson, Jr. was stabbed to death while being robbed in West Philadelphia. Five years later in 1978, Michael Needham was also murdered. In the course of investigating Needham's death, the Philadelphia police received information that led them to question the appellee, Charles Gilmore, in connection with Chesson's murder.

On July 13, 1978, two Philadelphia police officers went to Gilmore's residence, arrested him, and took him into custody. Gilmore was given his *Miranda* warnings at his home and again at police headquarters. After initially denying any involvement in Chesson's slaying, Gilmore gave a statement in which he admitted participating in the events that led to Chesson's death.

Gilmore stated that on the day Chesson was killed, he had come across Chesson lying on the street, apparently drunk. Gilmore began to go through Chesson's pockets. Needham joined Gilmore and they continued to search Chesson. According to Gilmore's statement Chesson "woke up and sat up, and [Needham] hit him with [a] cane." App. at 217–18. Needham then tried to obtain something from Chesson's back pocket, but was unable to get into the pocket. Gilmore stated that Needham asked Gilmore for his knife. Gilmore admitted that "I gave [the knife] to him and he cut him [Chesson]." *Id.* Gilmore stated that he ran across the street after the first time Needham stabbed Chesson. At trial, the medical examiner testified that Chesson had received over 50 stab wounds.

After Gilmore finished making the statement, he made a telephone call, apparently to his mother. During this call, which was overheard by a police officer, Gilmore repeated the substance of the statement he had given earlier.

* Hon. Donald E. Ziegler, United States District Court for the Western District of Pennsylvania, sitting by designation.

Gilmore was charged with robbery and murder, as well as several other charges that were dropped before trial. Prior to trial, Gilmore moved to suppress his statement as the product of an illegal arrest. This motion was denied. Gilmore's statement was the principal evidence introduced by the Commonwealth at trial, which was held before a judge without a jury. Gilmore then took the stand to testify in his own behalf. His testimony was essentially the same as his statement, i.e. that he was proceeding to rob the prone Chesson when Needham backed him off, asked him for his knife, and then stabbed Chesson at least once before Gilmore ran from the scene. Gilmore was convicted, and was sentenced to life imprisonment on the murder conviction and a concurrent term of 10–20 years for the robbery.

Gilmore pursued his claim that his statement was the fruit of an illegal arrest in a post-trial motion. The trial court denied the motion because it found that Gilmore's arrest was not illegal. On direct appeal, the Supreme Court of Pennsylvania affirmed. 496 Pa. 420, 437 A.2d 944 (1981).

About that time, there were significant developments in the state of the law with respect to warrantless arrests both in the Supreme Court of Pennsylvania and in the Supreme Court of the United States. In *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), the Pennsylvania Court had held that absent exigent circumstances a warrantless entry into a felony suspect's residence to make an arrest violated the Fourth Amendment. *Williams* anticipated by several years the United States Supreme Court's decision in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which definitively established this proposition as a matter of federal constitutional law.

However, in *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981), decided several months before Gilmore's appeal, a majority of the Pennsylvania Supreme Court declined to give its *Williams* decision retroactive effect, without any discussion of the Supreme Court's *Payton* decision which had already been announced. When Gilmore appealed to the Pennsylvania Court alleging the illegality of his arrest, which had occurred before the *Williams* opinion, the majority of that court affirmed the conviction as "without merit," without citing any authority on the arrest issue, but it apparently based its affirmance on the non-retroactivity holding in *Miller*.[1]

Gilmore sought a writ of certiorari from the Supreme Court, arguing that *Payton* should be applied retroactively. While his case was pending, the Supreme Court decided in *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), that *Payton* was to be "applied retroactively to all convictions that were not yet final at the time the [*Payton*] decision was rendered." *Id.* 457 U.S. at 562, 102 S.Ct. at 2593. The Court granted Gilmore's petition, vacated the judgment, and remanded the case to the Supreme Court of Pennsylvania for reconsideration in light of *Johnson*. *Gilmore v. Pennsylvania*, 458 U.S. 1103, 102 S.Ct. 3476, 73 L.Ed.2d 1363 (1982).

On remand, the Pennsylvania Supreme Court issued the following order:

Judgments of sentence affirmed. See *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978) (harmless error).

*Commonwealth v. Gilmore*, 500 Pa. 319, 320, 456 A.2d 148, 149 (1983). Gilmore did not seek review of this decision in the Supreme Court.

Gilmore then filed a petition for habeas corpus in federal district court. The peti-

---

1. This inference, which the Commonwealth asserts in its brief before us, Brief for Appellant at 5–6, is supported by the dissent of Justice Roberts, who incorporated in his statement the reasons he set forth in his earlier dissent in *Miller*, where he argued that *Williams* should be applied retroactively. Moreover, the retroactivity issue was one of the principal issues to which the parties' arguments were directed in the petition for certiorari and opposition thereto.

tion did not raise Gilmore's claim that his arrest violated the Fourth Amendment, but instead contended that Gilmore "was denied fundamental fairness where Supreme Court [of Pennsylvania] wrongfully determined that error (wrongful admission of confession in violation of Fourth Amendment) was harmless.... (Please note this is not a Fourth Amendment claim)." App. at 7. Gilmore's claim apparently is that he was denied due process when the Pennsylvania Supreme Court refused to overturn his conviction "where the Fourth Amendment violation had already been determined to exist." Petitioner's Reply to Commonwealth's Response to Petition for Writ of Habeas Corpus. App. at 21.

Gilmore's petition was referred to a magistrate. The magistrate found that Gilmore's due process claim actually was a Fourth Amendment claim "camouflage[d] ... in a chameleon-like fashion." App. at 31. As such, it was barred by the rule in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which precludes a habeas petitioner from raising a Fourth Amendment claim if the petitioner has had a full and fair opportunity to litigate the claim in state court. The magistrate recommended that the district court deny Gilmore's petition. Gilmore filed timely objections to the magistrate's report.

The district court declined to accept the magistrate's report and recommendation. Instead, the court reasoned that the United States Supreme Court's remand to the Pennsylvania Supreme Court required that Court to reexamine its previous affirmance of Gilmore's conviction in light of *United States v. Johnson.* The district court then found that because on remand the Pennsylvania Supreme Court had found "harmless error," it must have found that Gilmore's arrest violated the Fourth Amendment as interpreted in *Payton v. New York.* App. at 43. The court concluded that *Stone v.*

*Powell* precluded it from reexamining the state court's determination that a Fourth Amendment violation had occurred. However, the court held that the question "whether the error was harmless [is] not embraced by *Stone*" and thus was open to reexamination by a court hearing a habeas petition. *Id.* at 44. Turning to this question, the district court held that the Fourth Amendment violation was not harmless under the Supreme Court's decision in *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). Therefore, the court granted the petition, but ordered the writ stayed pending the Commonwealth's appeal [2] and, if necessary, pending retrial in state court.

On appeal, the Commonwealth's principal argument is that the district court erred in holding that *Stone v. Powell* does not foreclose federal court consideration of Gilmore's petition. Alternatively, the Commonwealth argues that if the district court correctly held that *Stone v. Powell* was inapplicable, it erred in finding that whatever Fourth Amendment violation occurred was not harmless.

## II.

The parties agree that this case requires a determination of the scope of the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Stone v. Powell,* the Court laid down the following rule:

[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* 428 U.S. at 494, 96 S.Ct. at 3052 (footnotes omitted). The Court reasoned that the incremental benefit in deterring illegal police conduct by applying the exclusionary

---

**2.** This appeal was argued on February 20, 1986. We withheld our decision pending the Supreme Court's review of this court's decision in *Morrison v. Kimmelman,* 752 F.2d 918 (3d Cir.1985), which has now been affirmed. *See Kimmelman*

*v. Morrison,* —— U.S. ——, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). The parties have submitted letter briefs on the effect of the Court's opinion on this case.

rule in a habeas proceeding did not outweigh the cost to society of excluding relevant, reliable evidence in a criminal prosecution.

Later cases hold that the rule of *Stone v. Powell* does not bar federal courts from hearing habeas petitions based on claims that the state had failed to prove that the defendant was guilty beyond a reasonable doubt, *see Jackson v. Virginia,* 443 U.S. 307, 320–24, 99 S.Ct. 2781, 2789–92, 61 L.Ed.2d 560 (1979), that a grand jury had been selected in a racially discriminatory manner, *see Rose v. Mitchell,* 443 U.S. 545, 559–64, 99 S.Ct. 2993, 3001–04, 61 L.Ed.2d 739 (1979), and, most recently, that the petitioner received ineffective assistance of counsel when the petitioner contends that his or her attorney failed to assert a Fourth Amendment claim. *See Kimmelman v. Morrison,* — U.S. —, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).[3]

With the exception of *Morrison,* these cases did not implicate, even tangentially, the introduction of evidence secured in violation of the Fourth Amendment, the focus of *Stone v. Powell.* In *Morrison,* on the other hand, petitioner asserted that he was denied effective assistance of counsel because of his attorney's failure to raise a Fourth Amendment claim in a timely fashion. The Court rejected the argument that a Sixth Amendment claim based on an asserted Fourth Amendment violation was identical to the Fourth Amendment claim standing alone for purposes of the *Stone v. Powell* rule. The Court's rationale was that the Sixth Amendment right to effective assistance of counsel is central to ensuring the reliability of the adversary process. While the claimed Fourth Amendment violation must be proven as an element of the Sixth Amendment claim, "the two claims have separate identities and reflect different constitutional values." *Id.* 106 S.Ct. at 2583.

Unlike *Morrison,* where the right to effective counsel implicated a different fundamental right than that protected by the Fourth Amendment and vindicated by the exclusionary rule, a harmless error determination does not and could not reflect different constitutional values than those in the underlying constitutional violation. A habeas claim based on a state court's determination that the introduction of evidence from a Fourth Amendment violation was harmless error is inseparable from the underlying Fourth Amendment claim. Such a determination does not implicate a personal constitutional right distinct from the underlying claim. Thus, for purposes of the *Stone v. Powell* rule, a habeas petitioner's claim that a state appellate court improperly found a Fourth Amendment violation to be harmless does not have a separate identity and may not be raised in a habeas petition in federal court.

Although *Morrison* does not control our decision here, a close reading of *Stone v. Powell* discloses that the Court was faced there with facts almost identical to those presented here. In one of the two cases consolidated before the Court in *Stone v. Powell,* the habeas petitioner, Powell, claimed that he had been arrested under an unconstitutionally vague vagrancy ordinance, and, therefore, that his arrest was illegal. Powell argued that the evidence seized pursuant to that arrest, which was used against him in a murder prosecution, should be suppressed. Powell presented this claim to the state trial court, which rejected it. On direct appeal Powell renewed this contention, but a California District Court of Appeals found that the constitutional error in Powell's arrest, if any, was harmless. The district court denied Powell's habeas petition for several reasons, among them that the exclusionary rule should not bar admission of the fruits of an otherwise valid arrest and that, in any event, the error was harmless. The Ninth Circuit reversed, holding that the vagrancy ordinance was unconstitutional

---

**3.** In other decisions, the Court has considered constitutional claims arising on habeas without suggesting that *Stone v. Powell* might bar review. *See, e.g., Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *see also* W. LaFave & J. Israel, *Criminal Procedure* § 27.3 at 1030 (1985).

and that the admission of the seized evidence was not harmless error.

In the companion case considered together with Powell's, Rice had been convicted of murder, and in its affirmance the Supreme Court of Nebraska had rejected Rice's contention that crucial evidence had been illegally seized. The federal district court, affirmed by the Court of Appeals, granted a writ of habeas corpus to the petitioner Rice on the ground that the evidence underlying his conviction should have been excluded at his state court trial. Thus, when it considered the issue of the review by federal habeas courts of state courts' use of evidence obtained in violation of the Fourth Amendment, the Supreme Court had before it one case in which the state court decision turned on the merits of the seizure and one case that was decided on the basis of harmless error.

The Supreme Court's opinion in *Stone v. Powell* precluding a federal court's collateral review of a Fourth Amendment issue, as long as the prisoner had a full and fair opportunity to litigate the Fourth Amendment claim in state court, did not distinguish between the two cases before it. That the state appellate court in *Powell* had found the error, if any, to be harmless was, therefore, irrelevant to the Court's decision. *See McDaniel v. Oklahoma,* 582 F.2d 1242, 1244 (10th Cir.), *cert. denied,* 439 U.S. 969, 99 S.Ct. 462, 58 L.Ed.2d 429 (1978). It follows that the *Stone v. Powell* holding barring federal habeas review applies not only when the state ruling was that the evidence was not unconstitutionally seized, as in *Rice,* but also when the state ruling was that introduction of the evidence was harmless, as in *Powell.*

Turning then to this case, when the Supreme Court directed the Pennsylvania Su-

preme Court to reconsider Gilmore's conviction in light of *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), applying *Payton* retroactively, the Pennsylvania Supreme Court merely reaffirmed Gilmore's conviction with a reference to harmless error. It is unclear from its terse obscure decision whether it was acknowledging that Gilmore's arrest was unconstitutional, an issue the Commonwealth has vigorously contested.[4] The district court construed it as an implicit finding that *Payton* was retroactively applicable to *Gilmore* and that the arrest was illegal.[5] The district court's conclusion is undermined by a more recent decision of the Pennsylvania Supreme Court construing *Johnson* as a nonconstitutional holding and declining, once again, to apply either *Payton* or *Williams* retroactively. *Commonwealth v. McFeely,* 509 Pa. 394, 502 A.2d 167 (1985). It is therefore equally plausible to construe the Pennsylvania Supreme Court's action here as reflecting its unwillingness to determine whether a *Payton* violation occurred, even if *Payton* applied, because any such violation would be harmless in this case, presumably because Gilmore testified. *But see Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

For purposes of our analysis of the effect of *Stone v. Powell,* we need not decide which construction to give the Pennsylvania Supreme Court decision. Gilmore was afforded an opportunity to litigate his claims in the state court. Under *Stone v. Powell,* a federal court may not reexamine the state court's determination that no Fourth Amendment violation occurred, that a violation had occurred but that introduction of its fruits was harmless, or that any Fourth Amendment violation that might have occurred had harmless results. We

---

4. The Commonwealth has consistently contended that Gilmore invited the officers into his home and that *Payton* was therefore inapplicable, an issue we do not reach. We assume that had there been a conclusive finding of consent, the Pennsylvania Supreme Court would have referred to it in its various decisions in this case, since it would have obviated any issue of retroactivity.

5. The district court also held that because *Stone v. Powell* "is not a one-way street and its strictures apply equally to the government and ... a defendant," App. at 44, it could not reexamine this "finding." In light of our decision, we need not reach this issue.

conclude, therefore, that the district court erred in holding that Gilmore's harmless error claim was not barred by *Stone v. Powell.*

Gilmore seeks to avoid the *Stone v. Powell* preclusion by arguing that the Pennsylvania Supreme Court's disposition on remand from the Supreme Court denied him "due process of law and fundamental fairness." Brief for Appellee at 13 n. 3. His claim is that he was denied "fundamental fairness" by the harmless error decision. *Id.* at 13; App. at 7.

However, the state court's harmless error determination cannot be transformed into a violation of Gilmore's due process rights. As *Stone v. Powell* itself demonstrates, this claim is indistinguishable for habeas purposes from a claim that the state court incorrectly decided a Fourth Amendment issue. The Courts of Appeals, including this court, have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar. *See, e.g. United States ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir.1978); *Swicegood v. Alabama,* 577 F.2d 1322, 1324–25 (5th Cir.1978); W. LaFave & J. Israel, *Criminal Procedure* § 27.3 at 1034. That the state court resolved the issue summarily does not alter this rule. *See Sonnier v. Maggio,* 720 F.2d 401, 409 (5th Cir.1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984). We do not foreclose the possibility that a state failure to give at least colorable application of the correct Fourth Amendment constitutional standard may indicate that there has been no opportunity for full and fair consideration, thereby precluding application of *Stone v. Powell. See Gamble v. Oklahoma,* 583 F.2d 1161, 1165 (10th Cir.1978). That is not the issue here.

Even though due process violations, unlike some Fourth Amendment violations, are cognizable in a habeas proceeding in federal court, *see Jackson v. Virginia,* 443 U.S. 307, 320–24, 99 S.Ct. 2781, 2789–92, 61 L.Ed.2d 560 (1979); *Cody v. Solem,* 755 F.2d 1323, 1328 (8th Cir.), *cert. denied,* —

U.S. ——, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985), petitioner may not cloak his or her Fourth Amendment claim in due process clothing to circumvent *Stone v. Powell.* Essentially, this is what Gilmore has attempted to do.

Due process is a flexible concept, but it cannot be stretched to protect a defendant from every asserted error in a state court's reasoning. At most Gilmore has alleged an erroneous harmless error determination by the state court. He has not alleged such egregious police behavior that would implicate a due process violation. Accepting Gilmore's argument would allow habeas petitioners to transmogrify every unsuccessful Fourth Amendment claim into a due process violation.

### III.

For the foregoing reasons, the decision of the district court granting a petition for writ of habeas corpus will be reversed.