## Commonwealth v. Benner

*Karen Muir,* for the Commonwealth.
*Wayne Bradburn,* for defendant.

BROWN, *P.J.,* August 25, 1995—Presently before this court for consideration is a motion to suppress filed by defendant Charles Benner. Oral argument on this matter was heard on July 24, 1995. Briefs by the parties were filed.

There are two issues for this court to decide. First, whether the tape recordings of defendant's private in-home conversations on November 17 and 20, 1994, violated Article I, Section 8, of the Pennsylvania Constitution and/or 18 Pa.C.S. §5721(B) of the Pennsylvania Wiretap Act. Should this court decide there has been a violation of either the Pennsylvania Constitution or the Wiretap Act, then the issue becomes whether the seizure of 42 marijuana plants and other marijuana paraphernalia were derived from that illegality.

The following facts of the case sub judice are not in dispute. On November 17, 1994, the police sent confidential informant Tammy Lack to defendant's residence to obtain incriminating evidence relating to the trafficking of a controlled substance. Lack, wearing a consensual body wire, entered defendant's residence at 254 South Atherton Street, State College, Centre County. The conversation that followed included Lack's gathering of current information about a prior marijuana transaction, a future marijuana transaction and incriminating statements from defendant about a marijuana grow operation. The entire conversation was monitored by police officers. While Deputy Attorney General Mi-

chael Madeira authorized the interception, no prior judicial approval was obtained for the use of the body wire. Lack was debriefed about her observations.

On November 20, 1994, the police again sent Lack to defendant's residence. Lack was again wearing a consensual body wire when she entered defendant's residence. This time, the parties completed the sale of four ounces of marijuana, which the parties had negotiated on November 17, 1994. Lack observed several items which are traditionally associated with narcotics transactions, such as "baggies" of weighed marijuana, unweighed marijuana, weighing scales and growing marijuana plants. Finally, Lack gathered information about (1) the occupant known as "David" and (2) future shipments of marijuana defendant would be receiving. Again, the police monitored the entire conversation. No search warrant was obtained to enter defendant's home. Lack was debriefed by police officers about her observations.

On December 5, 1994, at 5:30 p.m., Detective Kevin Barr entered defendant's residence with confidential informant Michelle Bankler. Unlike Lack, Bankler resided at the same address as defendant. It is unclear as to how, when or why Bankler was developed as a confidential informant.

Once inside defendant's residence, Detective Barr noticed an odor of growing marijuana. Because defendant's bedroom door was ajar, Detective Barr was able to observe both a fluorescent light emanating from defendant's room and a plastic jug with a plastic tube running into a metal closet.

The next day, December 6, 1994, a search warrant was properly executed at defendant's residence. As a result, the police seized the following items:

(1) 29 marijuana plants—closet no. 1, defendant's room.

(2) 13 marijuana plants—closet no. 2, defendant's room.

(3) 1 baggie of marijuana leaf—top bed, defendant's room.

(4) 10 aluminum packages of brown-tan substance in brown glass case—black case top of bed.

(5) miscellaneous fanny pack with pipe and paraphernalia—top bed.

(6) 1 marijuana law book—top bed.

(7) 1 plexiglass bong—foot of bed.

(8) 1 marijuana stems—can, foot of bed.

(9) 2 indicia of occupancy—top desk.

(10) 1 picture frame with marijuana leaves—top shelf desk.

(11) 1 comp. book with phone list—top B desk.

(12) 1 plexiglass bong—corner bedroom.

(13) miscellaneous pipe parts/wooden box—safe.

(14) 1 hand scale—shelf desk.

(15) 1 purple bag with pipe—shelf desk.

(16) 2 boxes of baggies—safe.

(17) 8 containers of marijuana seeds—safe.

   (a) Treasury bottle
       "Lactose"              "Sativa."

   (b) "Lactaid"           "Skunk Indica."

   (c) Quaker Boy box       "Thai."

   (d) Centrum bottle, small   "Indica."

   (e) film container      "Skunk Sativa."

   (f) Ligaplex bottle   "Oaccin Giant Sativa."

   (g) "Centrum," large     "no label."

   (h) Treasury Quintrem    "no label."

(18) 6 shop lights—closet no. 1.

(19) miscellaneous ballast, cables, lights, timers—closet no. 1.

Defendant was arrested by proper police procedure after the execution of the search warrant.

Defendant relies on *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994), as the controlling authority in this case. In *Brion,* the Pennsylvania Supreme Court held that Article I, Section 8, of the Pennsylvania Constitution precludes the police from sending a confidential informer into the home of an individual to electronically record his conversations and transmit them back to the police. It is difficult to imagine a case more squarely on point than *Brion* with the case presently before this court. It would, therefore, be simple to suppress the tape-recorded evidence based on *Brion.*

However, as the Commonwealth correctly points out, the *Brion* case was decided on December 30, 1994. The relevant facts at issue here took place between November 17 and 20, 1994. The Commonwealth urges this court not to apply *Brion* retroactively.

When considering whether or not to apply a decision retroactively, three factors are to be considered by the court. A decision regarding retroactivity is based upon (1) the purpose to be served by the new standards; (2) the extent of the reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice. *Commonwealth v. Miller,* 490 Pa. 457, 417 A.2d 128 (1980), *cert. denied,* 499 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). However, "[t]he purpose to be served by the new rule should receive primary consideration." *Commonwealth v. McFeely,* 509 Pa. 394, 399, 502 A.2d 167, 170 (1985). This court will analyze the purpose of the exclusionary rule under the Fourth Amendment of the United States Constitution; Article I, Section 8, of the Pennsylvania Constitution, and the *Brion* decision.

The United States Supreme Court made clear that the primary purpose of the exclusionary rule was to "deter police conduct." *U.S. v. Leon,* 468 U.S. 897,

916, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984). The exclusionary rule under the Fourth Amendment operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* 468 U.S. at 906, 104 S.Ct. at 3412, 82 L.Ed.2d at 687. Had Pennsylvania courts adopted this view of the exclusionary rule, then the *Brion* decision should not be applied retroactively. Obviously, the police should not have to "guess" what is the controlling law and authority.

However, the Pennsylvania Supreme Court has "long emphasized that, in interpreting a provision of the Pennsylvania Constitution, we are not bound by the decisions of the United States Supreme Court which interpret similar (yet distinct) federal constitutional provisions." *Commonwealth v. Edmunds,* 526 Pa. 374, 388, 586 A.2d 887, 894 (1991). The text of Article I, Section 8, of the Pennsylvania Constitution provides as follows:

"Section 8. The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

Unlike the federal constitution, the primary purpose of the exclusionary rule in Article I, Section 8, of the Pennsylvania Constitution is to embody "a strong notion of privacy." *Edmunds, supra* at 396, 586 A.2d at 898. The twin aims of Article I, Section 8, are "the safeguarding of privacy and the fundamental requirements that warrants shall only be issued upon probable cause." *Id.* at 398, 586 A.2d at 899. In *Brion,* the Supreme Court held that "the right to privacy in one's domain

is sacrosanct." *Brion, supra* at 257, 652 A.2d at 287. Sacrosanct has been defined as "most sacred or holy." Webster's New Collegiate Dictionary (1981). This court will not disturb this sanctity.

Because the primary purpose of the *Brion* decision is to safeguard a person's right to privacy, as opposed to deterring police conduct, this court has no choice but to apply the *Brion* decision retroactively. In accordance with that opinion, this court will enter an appropriate order to suppress any and all recorded conversations between Lack and defendant that took place within defendant's residence on November 17 and 20, 1994.

Defense counsel further demands that the "contents" of these two conversations be suppressed. 18 Pa.C.S. §5721(b)(2). "Contents" has been legislatively defined as "with respect to any wire, electronic or oral communication, is any information concerning the substance, purport or meaning of that conversation." 18 Pa.C.S. §5702. Defendant's conclusion then is that the contents definition includes the personal recollection of the conversations, observations of defendant's actions and observations of the contents within defendant's bedroom concurrently made by Lack. Accordingly, the four ounces of marijuana that was the subject of the November 20, 1994 transaction would also need to be suppressed as "fruit of the poisonous tree."

This court does not agree with defendant. Lack will be permitted to testify to the conversations and her observations that took place on November 17 and 20, 1994. There is nothing illegal about the fact that the conversations took place. Clearly, a person inside his home has a reasonable expectation of privacy that private conversations inside his home will not be intercepted by the police. However, "[a person] assumes

the risk that the person to whom he is directly speaking will report to the police." *Commonwealth v. Schaeffer,* 370 Pa. Super. 179, 207, 536 A.2d 354, 368 (1987). It is the interception of the conversations by the police that is illegal, not the conversation. The illegal interception does not make the conversation illegal. The utilization of confidential informants by the police would be rendered meaningless if the informant were not allowed to personally relay information to the police nor permitted to testify at trial.

With this in mind, answering the second issue involved in this case becomes easier. The issue is whether the seizure of 42 marijuana plants and other marijuana paraphernalia were fruits of the unlawful interception. The answer is "no." An appropriate order will be entered to deny suppression of the evidence seized as a result of the properly executed search warrant.

Even without the use of the electronic recordings, this court concludes that the district justice had sufficient information to issue a search warrant. The parties agree that after both the November 17 and 20, 1994 conversations, the police debriefed Lack. The affidavit clearly states the information relied upon came from Lack—not the electronic surveillance and recordings. In other words, the district justice relied upon the personal observations of the police and information relayed to the police by Lack.

Furthermore, Detective Barr went to the residence with Bankler. Bankler lived in the same building as defendant and was developed as an informant independent of Lack. Bankler invited Detective Barr into the residence. While inside, detective Barr noticed an odor of growing marijuana and observed, through defendant's open bedroom door, a fluorescent light and

a plastic jug with a plastic tube running into a metal closet.

In the affidavit attached to the Commonwealth's brief, this court notes defendant was displeased with Bankler's carelessness with allowing an individual unknown to him to see his grow operation. From defendant's point of view, certainly Bankler was careless. The other point of view is that good investigative work and a little luck led to the gathering of enough information to effectuate an arrest of defendant.

Because the search warrant was properly issued and executed, the evidence seized as a result of the December 6, 1994 search warrant will not be suppressed.

Accordingly, this court enters the following:

## ORDER

And now, August 25, 1995, upon consideration of the briefs and oral arguments of counsel, defendant Charles Benner's motion to suppress is granted in part and denied in part. This court has made the following determinations:

(1) The electronic tapes and recordings of the conversations between the confidential informant Tammy Lack and defendant on the dates of November 17 and 20, 1994, are suppressed.

(2) All other information and evidence, including, but not limited to, the four ounces of marijuana that was the subject of the November 20, 1994 transaction between confidential informant Lack and defendant, the personal observations of confidential informants Lack and Bankler and Detective Barr, and all the items seized as a result of the execution of the search warrant issued December 6, 1994, are all eligible for admission into evidence during the trial of this case.