J-S60020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ISIAH MICKEALS | |
| Appellant | No. 3564 EDA 2014 |

Appeal from the Judgment of Sentence November 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000701-2013

BEFORE: BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 20, 2015**

Isiah Mickeals appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after he was convicted of second-degree murder,[1] robbery,[2] carrying a firearm without a license,[3] and possession of an instrument of crime (PIC).[4] Upon review, we affirm.

The Honorable Barbara A. McDermott summarized the facts of this matter as follows:

> On September 5, 2012, at about 12:30 a.m., Maria Davilla was locked out of her home. She called her friend, Jose Ortiz, who

---

[1] 18 Pa.C.S. § 2502(b).

[2] 18 Pa.C.S. § 3701(a)(1)(ii).

[3] 18 Pa.C.S. § 6106.

[4] 18 Pa.C.S. § 907.

told her she could stay with him and that he would walk her to his house. Davilla and Ortiz met around Germantown Avenue and walked together to Ortiz's home, located at 15th Street and Allegheny Avenue[.] As they were standing on Ortiz's steps, [Mickeals] approached on a bicycle. [Mickeals] pointed a silver gun at Davilla and told her to drop her bag. Davilla immediately complied with the command. Ortiz intervened[,] telling [Mickeals] that "he didn't need to do this." [Mickeals] swung the gun in Ortiz's direction. As a car drove by Ortiz tried to get its attention, [Mickeals] shot Ortiz in the chest, and then [Mickeals] fled on a bicycle.

On September 5, 2012, at about 1:50 a.m.[,] in response to Davilla's call to 911, Sergeant John McWilliams of the Philadelphia Police Department arrived at 15th Street and Allegheny Avenue. Sergeant McWilliams observed Ortiz lying on the ground. At this time, Davilla was applying pressure to a gunshot wound to Ortiz'[s] chest. Officer Allen, who arrived after Sergeant McWilliams, transported Ortiz to Temple University Hospital. After securing the scene of the murder, Sergeant McWilliams spoke to Davilla. Davilla told Sergeant McWilliams that [Mickeals] had attempted to rob her and shot Ortiz in the process.

According to Dr. Edwin Lieberman, Assistant Medical Examiner, Ortiz [d]ied at Temple University Hospital on September 5, 2012, at 2:19 a.m. Ortiz's cause of death was a single gunshot wound to the chest that hit his heart and lungs.

Detective Thorsten Lucke recovered surveillance video from Temple University that depicted a man riding a bike southbound on 15th Street near Tioga Street at 1:44 a.m. on September 5, 2012.

After the murder, police officers received information from multiple members of the community regarding the identity of the murderer. A few days after the murder, Police Officer Eric Hidalgo received information from John Washington, a man who lived in the area of the murder. Washington explained that he was in the area of 3200-block of Carlisle Street with a group of acquantances when a man name Zeke admitted to killing Ortiz. Zeke stated that he had messed up because he did not mean to kill Ortiz.

On September 14, 201[2], Malcom Ransom gave a statement to the Philadelphia police indicating that Zeke had murdered Ortiz.

On September 15, 2012, Police Officer Brian Graves received information from an informant that he had known for fifteen years, who lived in the area of 15th Street and had provided information in approximately fifty to seventy[-]five other investigations. The informant told officer Graves that Zeke was at 20th and Westmoreland Streets and described his clothing.

After the murder, Sergeant Bob Wilkins received information from between four to six individuals that the murder was committed by a man name Zeke who lived in the area. On September 15, 2012, Sergeant Wilkins received a call by a woman named Raven. Sergeant Wilkins had known Raven for about twelve years and she had provided information that had led to arrests in homicide cases. Raven gave information of where Zeke was located and that Zeke was wearing a turquoise hat and camouflage pants.

On September 15, 201[2], at about 11:15 a.m., Officer Jonathon Switaj was patrolling in the 39th District. Officer Switaj received a call to bring in a man for questioning. The person was described as a black male who was wearing Army fatigue pants, a turquoise hat, about six feet tall, who goes by the nickname Zeke or Z[,] who was located at 20th Street and Westmoreland Street. When Officer Switaj arrived at 20th and Westmoreland Street[s] he observed [Mickeals] wearing Army fatigue shorts and a turquoise hat[,] standing with another male in front of a corner store. Officer Switaj asked [Mickeals] what his name was and [Mickeals] responded that his name was "Zeke." At that point, Officer Switaj arrested [Mickeals] and transported him to [the] homicide unit.

On September 15, 2012, at about 2:00 p.m.[, Mickeals] gave a formal statement to homicide detectives after waiving his *Miranda*[5] rights. In his statement[, Mickeals] confessed to shooting Ortiz and confirmed that he was the man in the video recovered by Detective Lucke. According to [Mickeals,] he was unaware his gun was loaded[,] and [] while he was robbing the victims, the gun went off.

Davilla identified [Mickeals] on four occasions: On September 15, 2012, from a photo array; on December 11, 2012, from a

---

[5] *Miranda v. Arizona*, 385 U.S. 436 (1966).

lineup; on January 16, 2013, at the preliminary hearing; and, at trial.

Trial Court Opinion, 2/13/15, at 2-4 (citations omitted).

A jury found Mickeals guilty of the above-mentioned charges on November 21, 2014. This timely appeal followed. Mickeals raises the following issues for our review:

1. Is [Mickeals] entitled to a new trial as a result of [c]ourt error where the [c]ourt denied [Mickeals] Motion to Suppress an out-of-court statement even though the record reflects that [Mickeals] was arrested without a warrant, without probable cause, without exigent circumstances and where the statement flowed directly from the illegal arrest as fruit of the poisonous tree?[6]

2. Is [Mickeals] entitled to an arrest of judgment on all charges where the evidence is insufficient to sustain the verdict?

Brief for Appellant, at 3.

Mickeals first asserts that his motion to suppress statements he made to the police while in custody was improperly denied. Specifically, Mickeals sought to suppress statements in which he confessed to committing the crimes for which he had been arrested. Mickeals asserts that he was arrested without probable cause and that his statements flowed directly from his illegal arrest.

---

[6] "The 'fruit of the poisonous tree' doctrine excludes evidence obtained from, or acquired as a consequence of lawless official acts." ***Commonwealth v. Johnson***, 68 A.3d 930, 946 (Pa. Super. 2013).

In addressing a challenge to the denial of a suppression motion, our review

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Hoppert***, 39 A.3d 358, 361 (Pa. Super. 2012) (citation omitted).

It is well-established that police may arrest without a warrant in certain situations. "Both the Pennsylvania Supreme Court and the United States Supreme Court have consistently held police may arrest without a warrant where the arresting officer has at least probable cause to believe the person arrested has committed or is committing an offense."

***Commonwealth v. Williams***, 568 A.2d 1281, 1286 (Pa. Super. 1990).

> To determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances. Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed.

***Commonwealth v. Clark***, 735 A.2d 1248, 1252 (Pa. 1999) (citations and quotation marks omitted). "Under the totality of the circumstances, a police officer must make a practical common sense decision whether, given all of

the circumstances known to him at that time, including hearsay information, there is a fair probability that a crime was committed and that the suspect committed the crime." *Commonwealth v. Holton*, 906 A.2d 1246, 1249 (Pa. Super. 2006).

Here, Mickeals admits that "[t]he issue is not whether the police had probable cause to arrest "Ze[ke]." Brief for Appellant, at 10. However, Mickeals argues that the police did not have probable cause to arrest him because he "had not been identified as Ze[ke] by anybody or anything that would have given the police probable cause to believe that [he] was, in fact, Ze[ke]." *Id.* We disagree.

The record reveals that after the police received tips from multiple identified individuals indicating that Zeke had perpetrated Ortiz's murder, two other individuals provided information to describe the location and appearance of the individual known in the neighborhood as Zeke and known to have committed the crimes in question. Such hearsay is properly considered in determining whether probable cause exists. *Holton*, *supra*. Additionally, "[w]hen an arrest is based on a description, the description must be specific." *Commonwealth v. Burton*, 770 A.2d 771, 782 (Pa. Super. 2001) (citing *Commonwealth v. Jackson*, 331 A.2d 189, 191 (Pa. 1975)).

Here, a confidential informant indicated that Zeke was located at 20th and Westmoreland Streets. A woman named Raven also indicated Zeke's location and provided a specific description of his clothing, including that he

was wearing a turquoise hat and camouflage pants.[7] When Officer Switaj went to 20th and Westmoreland Streets, he observed an individual wearing the clothing described and determined that he used the name Zeke. When Mickeals provided the name "Zeke," it corroborated the tips regarding his location and physical appearance, and when Officer Switaj arrested Mickeals, it was on the basis of a specific description. *Burton*, *supra*. Moreover, considering that the location, physical appearance and name matched the tips from all sources, common sense indicates that Officer Switaj had probable cause to believe that the individual was the person who had committed the crime. *Holton*, *supra*. Thus, Mickeals' arrest was legal and his confession was not fruit of the poisonous tree.[8]

_____

[7] We note that "information received from confidential informants may properly form the basis of a probable cause determination. A determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999). Here, the confidential informant was known to be reliable from providing information in approximately fifty to seventy-five investigations, and Raven was known for providing reliable information in other homicide cases.

[8] Even if probable cause did not exist at the time of his arrest, Mickeals' statement confessing to the crime was nevertheless voluntary and admissible. As our Supreme Court noted in *Commonwealth v. Smith*, 995 A.2d 1143 (Pa. 2010), "not all confessions or admissions secured from an illegally arrested person are per se inadmissible as trial evidence." *Id.* at 1152. The following factors are used to determine whether such evidence is admissible:

> (1) whether *Miranda* warnings were given; (2) the "temporal proximity of the arrest and the confession"; (3)

*(Footnote Continued Next Page)*

Mickeals also asserts that the evidence was insufficient to convict him of the charges for which he was found guilty.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotation marks omitted).

Second-degree murder occurs when a criminal homicide is "committed while defendant is engaged as a principal or an accomplice in the

_(Footnote Continued)_ ───────────

> "the presence of intervening circumstances"; and, (4) "the purpose and flagrancy of the official misconduct". The voluntariness of the statement is, of course, a threshold requirement, and the confession must also be "free of any element of coerciveness due to the unlawful arrest."

*Id.* (quoting *Commonwealth v. McFeely*, 502 A.2d 167, 170 (Pa. 1985)). Instantly, the record indicates that the officers were not unduly coercive, Mickeals was given his *Miranda* warnings properly, he was not held for a lengthy period of time before giving his statement, and he voluntarily waived his rights and then provided a formal statement to the police. Moreover, Mickeals made an inculpatory statement as a spontaneous reaction upon seeing himself depicted on a video recording leaving the scene of the crime. N.T. Trial, 11/18/14, at 39. For these reasons, Mickeals' confession would have been admissible regardless of whether probable cause existed for his arrest.

perpetration of a felony." 18 Pa.C.S. § 2502(b). Robbery is one such felony. 18 Pa.C.S. § 2502(d). Robbery occurs if, in the course of committing a theft, a person "threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii).

Here, Mickeals' does not dispute that he had possession of the gun, that he was attempting to rob Davilla and Ortiz, or that the gun discharged, resulting in Ortiz's death. Instead, Mickeals' sole argument regarding insufficiency of the evidence is that he did not "volitionally pull the trigger" when he shot Ortiz. Brief for Appellant, at 21. However,

> the felony-murder rule[] allows the finder of fact to infer the killing was malicious from the fact the actor was engaged in a felony of such a dangerous nature to human life because the actor, as held to the standard of a reasonable man, knew or should have known that death might result from the felony.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1023 (Pa. Super. 2002) (quoting *Commonwealth v. Legg*, 417 A.2d 1152, 1154 (Pa. 1980)). Ortiz was shot during the perpetration of the robbery, since Mickeals was trying to obtain Ortiz's cell phone and Davilla's purse when the gun discharged. Mickeals carried a loaded gun during the crime, which a reasonable person should know risks causing death. *Lambert*, *supra*. Thus, Mickeals' sufficiency argument is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/20/2015